Judge EFFRON
delivered the opinion of the Court.
At a general court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to his pleas, of two specifications of indecent acts with a child under the age of sixteen, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000). He was sentenced to a bad-conduct discharge, confinement for twelve months, and reduction to pay grade E-l. Pursuant to a pretrial agreement, the *416 convening authority suspended all confinement in excess of 270 days. The United States Navy-Marine Corps Court of Criminal Appeals, sitting en bane, affirmed the findings and sentence. United States v. Fischer, 60 M.J. 650 (N.M.Ct.Crim.App. 2004).
On Appellant’s petition, we granted review of the following issue:
WHETHER APPELLANT WAS SUBJECTED TO ILLEGAL PRETRIAL PUNISHMENT AND DENIED DUE PROCESS OF LAW WHEN HIS PAY WAS STOPPED WHILE HE WAS IN PRETRIAL CONFINEMENT AFTER THE END OF HIS OBLIGATED SERVICE.
For the reasons set forth below, we affirm the decision of the Navy-Marine Corps Court of Criminal Appeals.
I. BACKGROUND
A. PRETRIAL AND TRIAL PROCEEDINGS
Under Appellant’s enlistment contract, his period of obligated service ended on June 29, 2001. Eight weeks earlier, on May 4, Appellant was placed in pretrial confinement for various sexual offenses with minor females. In recommending pretrial confinement, Appellant’s commander explained that he considered Appellant a flight risk because of his upcoming end of obligated service (EAS) date, June 29.
Appellant was still in pretrial confinement on June 29. Under applicable military pay regulations, discussed infra, the Government terminated his entitlement to military pay and allowances. On July 11, defense counsel notified the Depot Consolidated Administrative Center that Appellant’s pay had been stopped. Initially, defense counsel was informed that Appellant’s pay would be reinstated. Later, the Government advised defense counsel that Department of Defense (DoD) regulations prohibited reinstatement of Appellant’s pay because he had reached his EAS date and was in pretrial confinement.
Appellant was convicted and sentenced on August 9, 2001. Appellant was paid for the period of pretrial confinement before his EAS, but he was not paid for the forty-one days of pretrial confinement that he served after his EAS. On appeal, Appellant argues that the termination of his pay amounted to illegal pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813 (2000).
B. PAY REGULATIONS
By statute, servicemembers who are on active duty are entitled to the basic pay of the pay grade to which they are assigned. 37 U.S.C. § 204(a)(1); see Bell v. United States, 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961) (a soldier’s entitlement to pay is statutory, not contractual). The Department of Defense Financial Management Regulations (DoD FMR) provide implementing rules concerning the obligation to pay servicemembers. See Paalan v. United States, 51 Fed.Cl. 738, 745 (2002). In the course of determining that Appellant’s pay could not be reinstated, the Depot Consolidated Administrative Center relied upon DoD FMR, vol. 7A, ch. 1, subpara. 010302.-G.4 (2005),[1] which provides: “If a member is confined awaiting court-martial trial when the enlistment expires, pay and allowances end on the date the enlistment expires. If the member is acquitted when tried, pay and allowances accrue until discharge.”
The regulation is consistent with decisions of the Comptroller General of the United States,[2] the United States Court of Federal *417 Claims, and the United States Court of Appeals for the Federal Circuit. Well before the enactment of the UCMJ, the Comptroller General determined that a soldier who reached EAS while in pretrial confinement, and who was later convicted, was not entitled to be paid subsequent to the EAS while in pretrial confinement. E.g., Comptroller General McCarl to Maj. E.C. Morton, United States Army, 11 Comp. Gen. 342 (1932). In a 1937 decision, the Comptroller General stated:
An enlisted man of the Navy held for trial or for sentence by court martial after expiration of enlistment is being held to await the completion of criminal proceedings against him under authority of the Articles for the Government of the Navy. He is no more entitled to pay when so held after expiration of his enlistment than is a civilian who is being held for trial on a criminal offense by the civil authorities, and the fact that the issuance of his discharge is delayed pending the conclusion of the proceedings gives him no right to pay beyond the period for which he contracted to serve. The period of retention for criminal proceedings is no part of the enlistment contract and the obligation of the Government ... is to pay him for the period for which he contracted to serve, not to pay him for any period he may be held on criminal charges after expiration of enlistment, any more than it would be obligated to pay him after his enlistment had expired if he were convicted and sentenced to imprisonment.
Acting Comptroller General Elliot to the Secretary of the Navy, 17 Comp. Gen. 103, 1937 WL 1038, at *2-*3 (1937), U.S. Comp. Gen. LEXIS 271, at *6-*7 (1937).
In 1951, shortly before the UCMJ took effect, the Comptroller General ruled that the pre-UCMJ prohibition against pretrial punishment[3] did not require payment of pretrial confinees held beyond their EAS date:
[T]he said provisions do not require any change in the rule that the pay and allowances of an enlisted person whose term of enlistment expires while he is in confinement, awaiting trial by court martial, terminate on the date of the expiration of his term of enlistment unless he is acquitted, in which event pay and allowances accrue until he is discharged.
Assistant Comptroller General Yates to the Secretary of the Army, 30 Comp. Gen. 449, 1951 WL 1104, at *2 (1951), U.S. Comp. Gen. LEXIS 86, at *6 (1951) [hereinafter Yates].
In suits brought by pretrial confinees who reached their EAS while in pretrial confinement against the Government for pay and allowances for the time in pretrial confinement past their EAS, the United States Court of Federal Claims and its predecessor court have followed the reasoning of the Comptroller General’s decisions, holding that “[w]hen an enlisted person is in confinement awaiting trial at the time his term of enlistment expires, his pay and allowances terminate on the date his enlistment expires unless he is subsequently acquitted.” Moses v. United States, 137 Ct.Cl. 374, 380, 1957 WL 8298 (1957); see also Singleton v. United States, 54 Fed.Cl. 689, 692 (2002). But cf. Rhoades v. United States, 229 Ct.Cl. 282, 668 F.2d 1213 (1982); Dickenson v. United *418 States, 163 Ct.Cl. 512, 1963 WL 8493 (1963) (distinguishing the facts and holding that the Comptroller General’s rule did not apply under the circumstances of the cases).
According to the United States Court of Appeals for the Federal Circuit, the authority for the military to hold an enlistee in service after EAS without pay pending court-martial unless there is an acquittal constitutes a “settled rule of law.” Simoy v. United States, 64 Fed.Appx. 745, 746 (Fed.Cir.2003); see also Anderson v. United States, 70 Fed.Appx. 572, 575 (Fed.Cir.2003); Dock v. United States, 46 F.3d 1083 (Fed.Cir.1995).
C. ARTICLE 13
Appellant contends that DoD FMR 010302.G.4, which was the basis for terminating his pay after he reached his EAS while in pretrial confinement, violated the Article 13, UCMJ, right to be free from illegal pretrial punishment. Article 13 provides: “No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him.” We have interpreted Article 13 to prohibit two types of activities: (1) the intentional imposition of punishment on an accused prior to trial, i.e., illegal pretrial punishment; and (2) pretrial confinement conditions that are more rigorous than necessary to ensure the accused’s presence at trial, i.e., illegal pretrial confinement. See United States v. Inong, 58 M.J. 460, 463 (C.A.A.F.2003); United States v. McCarthy, 47 M.J. 162, 165 (C.A.A.F.1997).
Appellant focuses his argument on the illegal pretrial punishment prong of Article 13. A violation of this prong “entails a purpose or intent to punish an accused before guilt or innocence has been adjudicated.” McCarthy, 47 M.J. at 165. We apply this standard by examining the intent of detention officials or by examining whether the purposes served by the restriction or condition are “reasonably related to a legitimate governmental objective.” United States v. King, 61 M.J. 225, 227 (C.A.A.F.2005) (citing Bell v. Wolfish, 441 U.S. 520, 539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); McCarthy, 47 M.J. at 165).
The question of whether Appellant is entitled to credit for an Article 13 violation is reviewed de novo. United States v. Mosby, 56 M.J. 309, 310 (C.A.A.F.2002). It is a mixed question of law and fact, and the military judge’s findings of fact will not be overturned unless they are clearly erroneous. Id. Appellant bears the burden of proof to establish a violation of Article 13. Id.
II. DISCUSSION
Appellant does not dispute the lower court’s finding that neither Appellant’s jailors nor his chain of command intended to punish Appellant by stopping his pay. Instead, Appellant asks this Court to find that the termination of Appellant’s pay, in accordance with DoD FMR 010302.G.4, amounted to illegal pretrial punishment because it operated as punishment imposed before trial.
A. REGULATORY PURPOSE
Appellant contends that the implicit purpose of DoD FMR 010302.G.4 is to punish. Appellant interprets DoD FMR 010302.G.4 as denying pay only to those who are guilty, citing the provision that those who are held in pretrial confinement past their EAS and later acquitted are reimbursed for the time held without pay. The Department of Defense regulations, however, are not so narrow.
A servieemember’s pay is not terminated just because the servicemember is placed in pretrial confinement. DoD FMR 010302.F.1 states that pay and allowances accrue to members in military confinement unless: (a) confined by military authorities on behalf of civil authorities; (b) pay and allowances are forfeited by court-martial sentence; or (c) the term of enlistment expires. A service-member who is confined before trial is entitled to “receive pay until the end of his enlistment contract, regardless of the ultimate disposition of the case.” Paalan, 51 Fed.Cl. at 745. If a pretrial eonfinee does not reach EAS until after the adjudication of the case, the pretrial eonfinee is entitled to pay and allowances for the time held in pre *419 trial confinement, regardless of whether the individual was found guilty or not guilty.
Moreover, every servieemember’s entitlement to pay is terminated at EAS. See Simoy v. United States, 64 Fed.Appx. 745, 747 (Fed.Cir.2003) (“a service member’s entitlement to pay ceases when his enlistment expires”); Matter of: Courts-martial Sentences-Reeords Lost Before Appellate Review-Appellate Leave Benefits, 1996 U.S. Comp. Gen. LEXIS 442, at *4-*5 (1996) (“It is a well settled rule that no credit for pay and allowances accrues to a court-martialed enlisted member during periods after the expiration of his term of enlistment ....”). Although Appellant characterizes the regulations as “terminating] a serviceman’s pay and allowances at the end of his enlistment if the serviceman is in pre-trial confinement,” there is no distinction between a service-member in pretrial confinement and one in any other status. All servicemembers lose their entitlement to pay and allowances upon expiration of their enlistment contract.
A servicemember may be paid after an enlistment expires in two situations. First, a servicemember who remains in the service and performs productive work may be paid. See United States v. Shattuck, 1989 CMR Lexis 187, at *5 (A.F.C.M.R.1989); DoD FMR 010302.G.1. Standard confinement duties, however, are not considered active-duty work that would entitle a pretrial confi-nee held past EAS to payment. See DoD FMR 010302.G.1; Combs v. United States, 50 Fed.Cl. 592, 594 n. 2 (2001); Shattuck, 1989 CMR Lexis 187, at *5. The second situation is the focus of Appellant’s concern. If a servicemember held in pretrial confinement past EAS is later acquitted, the servieemem-ber is retroactively paid for the time spent in pretrial confinement past the EAS date. See DoD FMR 010302.G.4. Appellant assumes that because one group of pretrial eonfinees (the group that is later acquitted) is reimbursed, then the other group (the group that is later convicted) is being punished. This argument takes too limited a view of the regulations. Acquittal provides a rational, objective basis for reimbursement. The Government’s policy of retroactively paying persons held past their EAS when a charge has not been sustained at trial does not signify an intent to punish the other group. In civilian criminal cases, for example, the Government may be liable for reasonable attorney’s fees and litigation expenses to a prevailing defendant if the Government position was “vexatious, frivolous, or in bad faith.” Hyde Amendment, Pub.L. No. 105-119, tit. VI, § 617, 111 Stat. 2440, 2519 (codified in statutory notes at 18 U.S.C. § 3006A (2000)). Although more limited than the reimbursement provision of DoD FMR 010302.G.4, the Hyde Amendment reflects a policy to compensate specific individuals because of a flaw in their prosecution. It is not a policy designed to punish those who are not compensated. Likewise, we should not assume that the compensatory provisions of the military pay regulations reflect an implicit intent to punish an individual in Appellant’s situation.
We note Appellant does not allege that he was held in pretrial confinement without due process. Appellant was placed in pretrial confinement in accordance with Rule for Courts-Martial 305, which contains specific standards and detailed requirements for notice and an opportunity to respond. Following the determination that he should be held in pretrial confinement, Appellant’s pay was terminated in accordance with a neutral criterion, his EAS.
Appellant does not claim before this Court that the termination of his pay violated the Thirteenth Amendment’s prohibition against involuntary servitude or that there is a constitutional right to be paid while in pretrial confinement. In that regard, we note that federal civilian employees may be suspended without pay upon an indictment, regardless of whether there is pretrial confinement. See 5 U.S.C. § 7513(b) (2000). As the Federal Circuit explained:
[A]n indictment ... will, as a general rule, provide reasonable cause for an agency to believe that the employee has committed such a crime, and, when the nature of the crime alleged relates to the employee’s ability to perform his or her duties, an agency may summarily suspend the employee, without pay, pending the outcome of the criminal proceedings.
*420 Richardson v. United States Customs Serv., 47 F.3d 415, 419 (Fed.Cir.1995). By contrast, the pay of military personnel is not terminated upon the filing or referral or charges, nor is it terminated upon pretrial confinement. The fact that pay is terminated only when pretrial confinement is combined with a neutral criterion, the expiration of the term of service, underscores the non-punitive nature of the policy. When the Government selects one among many available objective criteria for terminating pay, the fact that other criteria could have been used does not demonstrate that the selected point fails to serve a legitimate Government objective. Like the indictment date, the EAS date is a rational, objective point for termination of pay, and it is reasonably related to the legitimate Government objective of not paying people who are not performing duties.
B. REGULATORY EFFECT
Appellant next argues that even if the regulation is not implicitly punitive, the policy is punitive in effect under the factors set out by the Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). In Mendoza-Martinez, the Court set forth the following seven factors for use in determining whether an Act of Congress is punitive or regulatory in nature: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation promotes retribution and deterrence — the traditional aims of punishment; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. 372 U.S. at 168-69, 83 S.Ct. 554; see Fischer, 60 M.J. at 656-58 (Villemez, J., dissenting).
Our Court has not previously applied the Mendozar-Martinez factors in the context of conducting a review under Article 13. Assuming, without deciding, that the Mendozar-Martinez factors are applicable to Article 13, these factors do not support a finding that DoD FMR 010302.G.4 is punitive.
1. Affirmative Disability or Restraint
We first take into account whether DoD FMR 010302.G.4 imposes an affirmative disability or restraint. See Mendoza-Martinez, 372 U.S. at 168, 83 S.Ct. 554. DoD FMR 010302.G.4 provides for the termination of pay for an individual in Appellant’s situation. Although termination of pay at EAS could be viewed as a disability, it is difficult to characterize this as an affirmative disability because Appellant, and those in his position, are not entitled to be paid. See Yates; Shottuck, 1989 CMR LEXIS 187, at *4^*5.
2. Historic Perspective
The next factor considers the historical perspective on the consequence of the regulation. Mendoza-Martinez, 372 U.S. at 168, 83 S.Ct. 554. Appellant points out that “[fjorfeiture of pay has long been regarded as punishment.” In the present ease, there has been no forfeiture of pay. Where Appellant was not entitled to payment, nothing could have been forfeited.
Also, while we do not give great weight to negative legislative history, we note that Congress has amended provisions of the UCMJ addressing military pay on several occasions, but has not disturbed the settled interpretation of the relationship between Article 13 and termination of military pay upon EAS. See, e.g., Military Justice Act of 1983, Pub.L. No. 98-209, 97 Stat. 1393 (1983) (amending Article 57, UCMJ, 10 U.S.C. § 857); National Defense Authorization Act for Fiscal Year 1996, Pub.L. No. 104-106, tit. XI, 110 Stat. 461-67 (1996) (amending Article 57, establishing Article 58b, 10 U.S.C. § 858b); National Defense Authorization Act for Fiscal Year 1998, Pub.L. No. 105-85, § 581-82,1073(a)(9)-(ll), 111 Stat. 1759, 1900 (1997) (amending Article 58b).
3. Scienter
As previously discussed, the pay of all servieemembers is terminated when they reach EAS. Consciousness of guilt is not a *421 factor in determining whether to implement the regulation, so the regulation has no role in a finding of scienter.
4. Retribution and Deterrence
The fourth factor considers whether DoD FMR 010302.G.4 promotes the traditional aims of punishment — retribution and deterrence. Mendoza-Martinez, 372 U.S. at 168, 83 S.Ct. 554. Appellant argues that “it is difficult to imagine a better form of retribution and deterrence.” The policy, however, is not aimed at all who are accused of a crime and held in pretrial confinement, but only applies if a neutral event occurs — the person’s EAS date.
5. Application to Criminal Behavior
The fifth factor requires an evaluation as to whether the policy is invoked as a result of behavior that is already a crime. Mendoza-Martinez, 372 U.S. at 168, 83 S.Ct. 554. Appellant argues that this factor is met because the relevant FMR provisions would not have been triggered if there was no probable cause to believe Appellant violated the UCMJ. However, the behavior to which DoD FMR 010302.G applies is reaching the end of an enlistment contract, which is not a crime.
As noted above, a servieemember does not lose entitlement to pay by virtue of being in pretrial confinement. The deciding factor is whether the servieemember has reached EAS, not whether there is probable cause to believe the individual violated the UCMJ. See DoD FMR 010302.G.4.
6. Alternative Purpose
The sixth factor considers whether there is a non-punitive purpose to the regulation. Mendoza-Martinez, 372 U.S. at 168-69, 83 S.Ct. 554. Here, Appellant reiterates his argument that the stated purpose of the FMR is pretext, specifically noting that DoD FMR 010302.G.4 returns pay and allowances to servicemembers in Appellant’s position who are subsequently acquitted.
However, there is an alternative, non-punitive purpose of DoD FMR 010302.G.4. The alternative purpose is that a servieemember held in pretrial confinement who has passed EAS and who is not providing productive service is not entitled to pay and allowances. As discussed above, EAS is a neutral, non-punitive point in time which is reasonably related to the legitimate governmental interest in terminating the pay of persons who are not performing productive service.
7. Excessiveness
The final factor considers whether the regulation is excessive in relation to the alternative purpose assigned to it. Mendoza-Martinez, 372 U.S. at 169, 83 S.Ct. 554. Appellant argues that the FMR inflicts an excessive toll. We disagree. In civilian life, pretrial confinees may lose their jobs and are often not compensated for the time spent in pretrial confinement. The military’s policy to reimburse pretrial confinees who were mistakenly held is more generous than the Hyde Amendment, discussed above, that applies in civilian criminal cases. Although Appellant may undergo personal financial loss because of the policy reflected in the regulations, the termination of pay upon the expiration of the enlistment contract does not signify that the policy is excessive.
III. CONCLUSION
As Appellant conceded, the brig authorities in this case had no intent to punish Appellant. The regulation is not implicitly punitive or punitive in effect. There is a legitimate, non-punitive reason behind the regulation. The application of the policy was reasonable, given that Appellant reached his EAS and did not perform productive services. Under an Article 13 claim, we look to whether there was intent to punish or a punitive effect. If Appellant takes issue with the propriety of the underlying decisions as a matter of fiscal law, he must pursue that issue before the United States Court of Federal Claims.
As a final matter, Appellant also maintains that his Fifth Amendment rights were violated because he was punished by virtue of the application of DoD FMR 010302.G.4 without due process of law. In view of our conclusion that the regulation has a legitimate non- *422 punitive purpose, there is no punishment at issue in this case. Moreover, as explained above, there was no forfeiture in this case because Appellant had no entitlement to pay and allowances.
IV. DECISION
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

. The Depot Consolidated Administrative Center cited DoD FMR, vol. 7A, ch. 3, subpara. 030207.D. This provision is identical to DoD subpara. 010302.G.4, the only difference being that subpara. 030207 appears in Chapter 3, which is entitled "Special Pays — Officers Only” as opposed to Chapter 1, which is entitled "Basic Pay.” Though subpara. 030207 was cited by the Depot Consolidated Administrative Center, Appellant’s brief refers to subpara. 010302, and the Government’s brief refers to subpara. 030207. For consistency, our discussion will cite to sub-para. 010302, but the analysis would be no different for subpara. 030207.

. The Comptroller General is the head of the Government Accountability Office (GAO), formerly known as the General Accounting Office. See GAO Human Capital Reform Act of 2004, *417 Pub.L. No. 108-271, 118 Stat. 811 (2004). The GAO is an independent, nonpartisan agency in the legislative branch that reports to Congress on the activities of executive branch agencies. Frederick M. Kaiser, General Accounting Office and Comptroller General: A Brief Overview, in Major Studies and Issue Briefs of the Congressional Research Service (2000); Frederick C. Mosher, The GAO: The Quest for Accountability in American Government 2-3 (1979). A primary duty of the Comptroller General involves issuance of opinions on behalf of the legislative branch interpreting legislation and determining the legality of financial transactions. See Mosher, supra at 205-06.

. "[N]or shall any defendant awaiting trial be made subject to punishment or penalties other than confinement prior to sentence on charges against him." Article of War 16, Manual for Courts-Martial, U.S. Army {MCM) (1949 ed.), App. 1. ‘‘[N]or shall any accused who is confined while awaiting trial be made subject to punishments or penalties other than confinement for any offense with which he stands charged prior to execution of an approved sentence on charges against him ... and they will not forfeit pay or allowances during the period of confinement except pursuant to sentences ordered executed.” MCM (1949 ed.), H 19a.