# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Airman Basic JONATHAN M. MURRAY
### United States Air Force

## ACM 38663

## 4 November 2015

Sentence adjudged 19 March 2014 by GCM convened at Joint Base San Antonio–Lackland, Texas. Military Judge: William C. Muldoon, Jr. (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 19 months, and forfeiture of all pay and allowances.

Appellate Counsel for the Appellant: Major Isaac C. Kennen, Major Jennifer J. Raab, and Major Jeffrey A. Davis.

Appellate Counsel for the United States: Captain Collin F. Delaney and Gerald R. Bruce, Esquire.

Before

HECKER, DUBRISKE, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

DUBRISKE, Judge:

In accordance with his pleas, Appellant was convicted by a military judge sitting alone of conspiracy, failure to obey a lawful order, wrongful disposition of military property, larceny of military property, and assault consummated by a battery, in violation of Articles 81, 92, 108, 121, and 128, UCMJ, 10 U.S.C. §§ 881, 892, 908, 921, 928. Appellant was sentenced to a bad-conduct discharge, 22 months of confinement, and total forfeitures of all pay and allowances. The convening authority reduced Appellant's

confinement sentence from 22 to 19 months but otherwise approved the sentence as adjudged.

On appeal, Appellant argues he is entitled to relief given his adjudged sentence is inappropriately severe as compared to the sentence of his co-conspirator. He also argues he is entitled to a reduction in his sentence due to the Government's violation of his right to timely post-trial processing. Finally, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant alleges the military judge erred in failing to grant relief under Article 13, UCMJ, 10 U.S.C. § 813. In addition to these assignments of error, we specified a question surrounding the failure of the Government to include a victim impact statement as part of the staff judge advocate's recommendation (SJAR).

Finding no error that materially prejudices a substantial right of Appellant, we now affirm the findings and sentence in Appellant's case.

*Background*

In August 2012, Appellant's live-in girlfriend, who was pregnant at the time, reported to authorities that Appellant, a Security Forces (SF) member, had choked her, struck her in the face, and applied a "pressure point" technique to her neck. Appellant was arrested and placed in civilian confinement for seven days.

Shortly after being released, Appellant was approached by a co-worker, Airman Basic JH, with a scheme for them to make money to offset their respective financial difficulties. Airman Basic JH had previously worked in the SF mobility warehouse and believed he could remove military equipment from the warehouse to sell for cash off the installation.

After agreeing to the plan, Appellant and Airman Basic JH entered the SF mobility warehouse at night on three different occasions, removing various items of military equipment. This equipment, valued at approximately $56,000, included night vision devices, rangefinders, binoculars, a thermal imager, and a satellite communication antenna. Some of the stolen items were transported to Appellant's apartment or a storage unit he rented with Airman Basic JH to be held until a buyer was located.

Airman Basic JH then arranged to sell some of the stolen property to three different civilians. To facilitate the sales, Appellant would drive Airman Basic JH to an established location and remain in his vehicle as a lookout in case something went awry during the sale. Once the sale was complete, Appellant was provided with his half of the proceeds from the sale. Appellant estimated he received $2,000 from the various transactions.

After Appellant came under investigation for theft of military property, his girlfriend reported Appellant had again assaulted her. She alleged Appellant had slammed her head on the floor and struck her in the face and torso with his hands.

*Sentence Appropriateness*

This Court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 148 (C.A.A.F. 2010).

In reviewing for sentence appropriateness, "[t]he Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). An appellant bears the burden of demonstrating that the cited cases are "closely related" to the appellant's case and the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If the appellant meets this burden, the government "must show that there is a rational basis for the disparity." *Id.* However, it is important to note when conducting this analysis that "[s]entence comparison does not require sentence equation." *United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001) (citations omitted).

We do not believe Appellant has met his burden of showing his co-conspirator's case is closely related. While Appellant's offenses related to the theft and sale of military property are basically identical to those brought against Airman Basic JH, this is not the only course of criminal conduct charged against Appellant. Appellant, unlike his co-conspirator, was convicted of battering his girlfriend on two occasions, including once when she was pregnant. He was also convicted of violating a no-contact order issued by his squadron commander, which ultimately resulted in one of the violent confrontations between Appellant and his girlfriend.

Assuming, arguendo, Appellant met his burden of identifying a closely related case, we do not believe the sentences here are highly disparate. Appellant argues his adjudged sentence is highly disparate as compared to the approved—not the adjudged—sentence of his co-conspirator. This is comparing the proverbial "apples to oranges." Airman Basic JH was sentenced to 38 months confinement, 16 months more than

Appellant's adjudged sentence. We acknowledge Airman Basic JH did not receive a punitive discharge, and that his adjudged sentence was later reduced to only 19 months because of a pretrial agreement with the convening authority. Appellant does not get to benefit from his co-conspirator's pretrial agreement when determining whether his adjudged sentence is appropriate under Article 66(c), UCMJ, 10 U.S.C. § 866(c). Instead, in making sentence comparisons, we compare the adjudged sentences rather than the approved sentences. *Anderson*, 67 M.J. at 706. Here, the adjudged sentences are not highly disparate, and thus Appellant is not entitled to relief on sentence comparison grounds. Moreover, as noted above, Appellant's criminal conduct was not limited to the larceny and sale of military property. Given our conclusion, the adjudged sentences were not highly disparate considering these factors, so we decline to grant relief.

*Post-Trial Processing Delays*

Appellant also argues the 153-day period between the conclusion of trial and the convening authority's action warrants this court disapproving his punitive discharge. Under *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), there is a presumption of unreasonable delay when the convening authority does not take action within 120 days of the conclusion of the trial. In requesting relief, Appellant argues his long-standing anxiety has been exacerbated by the Government's post-trial processing delay.

We review de novo an appellant's claim that he has been denied the due process right to a speedy post-trial review and appeal. *Id.* at 135. Because the 153-day delay in this case is facially unreasonable under *Moreno*, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135. In cases where there is no finding of prejudice, however, appellate courts will only find a due process violation when, in balancing the other three *Barker* factors, the delay is "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Arriaga*, 70 M.J. 51, 56 (C.A.A.F. 2011) (citing *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006)).

Appellant is unable to establish prejudice in this case. *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration, (2) anxiety and concern, and (3) impairment of ability to present a defense at a rehearing. *Moreno*, 63 M.J. at 138–39. None are present in this case. While Appellant claims he has suffered increased anxiety while confined, his condition does not meet the "particularized anxiety" standard necessary to establish prejudice. *See id.* at 140 (holding that, for the second sub-factor, the appellant must demonstrate he suffered a "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision").

ACM 38663

Furthermore, having considered the totality of the circumstances and the entire record, we find the post-trial delay in this case is not so egregious as to adversely affect the public's perception of fairness and integrity of the military justice system. *See Toohey*, 63 M.J. at 362. We are also convinced that any error in this case is harmless beyond a reasonable doubt.

A finding of harmless error does not end the inquiry, as we may grant sentence relief under Article 66(c), UCMJ, even when we find no prejudice in unreasonable post-trial delays. *United States v. Tardif,* 57 M.J. 219 (C.A.A.F. 2002). However, "[a]ppellate relief under Article 66(c) should be viewed as the last recourse to vindicate, where appropriate, an appellant's right to timely post-trial processing and appellate review." *Id.* at 225. We reviewed the entire record, to include the court reporter's chronology, and considered the manner in which the record was prepared. Although the record of trial was not excessively long or complex, we are not persuaded that *Tardif* relief is warranted in this case.

### Pretrial Punishment

Pursuant to *Grostefon*, Appellant also argues his commander's order restricting him to Joint Base San Antonio–Lackland (JBSA–Lackland) violated Article 13, UCMJ. The order allowed Appellant to transit freely on most of JBSA–Lackland, and provided him with a mechanism to request permission to leave the installation. Appellant was also allowed to have visitors on the installation, although a request had to be made through one of several individuals in Appellant's leadership chain. The order was to remain in effect until the conclusion of the ongoing investigation against Appellant.

Article 13, UCMJ, provides, in part, "No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence . . . ." Courts have identified two types of activities that violate this provision: "(1) the intentional imposition of punishment on an accused prior to trial, i.e., illegal pretrial punishment; and (2) pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial, i.e., illegal pretrial confinement." *United States v. Fischer*, 61 M.J. 415, 418 (C.A.A.F. 2005).

Generally, the question of whether an appellant is entitled to credit for a violation of Article 13, UCMJ, is a mixed question of fact and law. *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002). We review findings of fact under a clearly erroneous standard and the ultimate question of whether the appellant is entitled to credit under Article 13, UCMJ, de novo. *See Fischer*, 61 M.J. at 418. When a military judge makes a finding that there was no intent to punish an appellant, we will not overturn that finding unless it is clearly erroneous. *Mosby*, 56 M.J. at 310; *United States v. Smith*, 53 M.J. 168,

170 (C.A.A.F. 2000). The appellant bears the burden of establishing his entitlement to credit. *See Fischer*, 61 M.J. at 418.

Contrary to Appellant's claim, there is no evidence the restriction order was issued by his chain of command with an intent to punish. Furthermore, after examining the entire record of trial, we find the order served legitimate, non-punitive purposes. *See Smith*, 53 M.J. at 172.

Appellant also alleges he is entitled to confinement credit as the conditions attached to his restriction were tantamount to confinement. In assessing whether an appellant is entitled to administrative credit for pretrial confinement, this court reviews de novo whether certain pretrial restrictions were tantamount to confinement. *United States v. King*, 58 M.J. 110, 113 (C.A.A.F. 2003). This determination is based on the totality of the conditions imposed on the military member. *Id.*

Rule for Courts-Martial (R.C.M.) 305 applies to "restriction tantamount to confinement" only when the conditions and constraints of the restriction constitute physical restraint that deprives the accused of his freedom. *United States v. Rendon*, 58 M.J. 221, 224 (C.A.A.F. 2003). Other forms of restriction do not trigger the application of R.C.M. 305. *United States v. Regan*, 62 M.J. 299, 302 (C.A.A.F. 2006). Ultimately, the "substantial impairment of the basic rights and privileges enjoyed by service members . . . is the common thread in cases in which [such] credit is due." *United States v. Calderon*, 34 M.J. 501, 506 (A.F.C.M.R. 1991) (quoting *United States v. Smith*, 20 M.J. 528, 531 (A.C.M.R. 1991)) (internal quotation marks omitted).

We adopt the military judge's findings of fact and conclusions of law on this question. Appellant had full access to services on a large military installation, and he was provided with a mechanism to seek permission to leave the installation. *See King*, 58 M.J. at 113–14. As such, Appellant is not entitled to confinement credit.

### *Staff Judge Advocate's Recommendation*

The issue specified by the court was driven by the Government's failure to attach a victim impact statement to the SJAR as required by R.C.M. 1106(d)(3).[*] After reviewing the briefings from both parties on this question, we find Appellant suffered no material prejudice from any possible error in this case.

---

[*] Rule for Courts-Martial 1106(d)(3) was amended by Executive Order 13669 on 13 June 2014. Exec. Order No. 13,669, 3 C.F.R. 249, 260 (2014). Before the executive order was signed, the requirement to inform victims of their right to submit an impact statement existed in Air Force Instruction (AFI) 51-201, *Administration of Military Justice* ¶ 9.9 (6 June 2013). Additionally, service of any victim impact statement on the accused and defense counsel was required by AFI 51-201, ¶ 9.10.

Proper completion of post-trial processing is a question of law which this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Failure to comment in a timely manner on matters in the SJAR, or on matters attached to the SJAR, waives any later claim of error in the absence of plain error. R.C.M. 1106(f)(6); *United States v. Scalo,* 60 M.J. 435, 436 (C.A.A.F. 2005). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65).

Prior to authentication of the record of trial, the base level staff judge advocate (SJA) notified the victim of her right to provide the general court-martial convening authority (GCMCA) with a statement regarding the personal impact of Appellant's crimes on her. *See* R.C.M. 1105A. The notice informed the victim the statement would be considered by the GCMCA prior to taking action on Appellant's case. The notice also informed the victim that any statement submitted would be provided to Appellant and his legal counsel.

The victim provided a statement on 27 June 2014. The SJA then completed an indorsement memorandum to the GCMCA that purported to forward the victim's statement for review. Although this memorandum did not contain an additional indorsement reflecting the GCMCA's receipt and consideration of the victim's statement, we presume for the purposes of our review that the GCMCA reviewed the victim impact statement prior to taking action on Appellant's case.

On 22 July 2014, the SJAR was prepared by the GCMCA SJA, but failed to either mention or attach the victim impact statement as mandated by R.C.M. 1106(d)(3). Appellant's clemency matters, submitted on 15 August 2014, did not acknowledge the impact statement or its submission to the GCMCA. Likewise, the addendum to the SJAR was silent regarding the victim's submission.

What is unclear from the record, and what precipitated the specified issue, is whether Appellant received a copy of the victim impact statement at any time prior to action. There is no evidence in the record of trial that Appellant or his counsel ever receipted for this document. The victim's statement was contained in the volume of the record of trial containing post-trial matters. However, there is no evidence this document was present in the copy of the record of trial provided to Appellant or his counsel.

Appellant, in his answer to the specified issue, did not allege the victim impact statement was missing from his copy of the record of trial. As such, we choose to apply a presumption of regularity in this specific case and find the victim impact statement was contained in the copy of the record of trial provided to Appellant. *See United States v. Mark*, 47 M.J. 99, 101 (C.A.A.F. 1997). Although we disagree with the Government that

Appellant forfeited this issue when he failed to identify the SJA's error or otherwise note the error in his clemency response, we agree with Appellant's assertion that he was not materially prejudiced in any way.

*Promulgating Order Error*

We note two errors on the initial court-martial order and direct the completion of a corrected order. First, no pleas were entered on Charge II prior to it being dismissed by the military judge before arraignment. The corrected order should reflect this fact, as well as note the renumbering of the remaining charges. *See* Air Force Instruction 51-201, *Administration of Military Justice*, ¶¶ 10.8.2.2, 10.8.2.2.4 (6 June 2013). Second, the sentence adjudged date should be 19 March 2014 not 22 July 2014.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court