# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

## No. ACM S32426

———————————

### UNITED STATES
*Appellee*

**v.**

### Paul N. SMALL
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary
Decided 6 March 2018

———————————

*Military Judge:* Francisco Mendez.

*Approved sentence:* Bad-conduct discharge, reduction to E-3, and a reprimand. Sentence adjudged 26 May 2016 by SpCM convened at Joint Base Andrews, Maryland.

*For Appellant:* Major Kevin R. Cayton, USAF; Major Jarett F. Merk, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges*.

Senior Judge JOHNSON delivered the opinion of the court, in which Judge MINK and Judge DENNIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

JOHNSON, Senior Judge:

A military judge found Appellant guilty, in accordance with his pleas, of two specifications of absenting himself from his place of duty, two specifications of failure to go to his place of duty, one specification of dereliction of duty, one specification of making a false official statement, one specification of drunk driving, one specification of wrongful appropriation of nonmilitary property of a value of under $500.00 on divers occasions, one specification of disorderly conduct, and one specification of incapacitation for the performance of his duties due to previous overindulgence in alcohol or drugs, in violation of Articles 86, 92, 107, 111, 121, and 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 892, 907, 911, 921, 934.[1] A special court-martial composed of officer members sentenced Appellant to a bad-conduct discharge, reduction to the grade of E-2, restriction to Joint Base Andrews, Maryland for two months, and a reprimand. The convening authority approved only the bad-conduct discharge, reduction to the grade of E-3, and reprimand.

Appellant's assignments of error enumerate the following issues for our consideration on appeal: (1) Whether Appellant was subjected to unlawful pre-trial and post-trial restraint in violation of Article 13, UCMJ, 10 U.S.C. § 813, Rule for Courts-Martial (R.C.M.) 304, and his constitutional rights, and whether the record of trial is complete; (2) Whether the court-martial promulgating order (CMO) contains an incorrect summary of the charges;[2] and (3) Whether the military judge provided an improper sentencing instruction to the court members. We find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant served effectively in the emergency management career field until an acrimonious and protracted divorce led to financial and emotional difficulties that culminated in a series of finance-, alcohol-, and absence-related offenses. From March 2015 until August 2015, Appellant repeatedly misused

---

[1] The wrongful appropriation was a lesser-included offense of a specification alleging larceny of nonmilitary property of a value of under $500.00 on divers occasions in violation of Article 121, UCMJ, to which Appellant pleaded not guilty. The Government declined to proceed on the greater charge of larceny, and the military judge entered a finding of not guilty as to that offense.

[2] Appellant notes the CMO misidentifies the location from which Appellant absented himself as alleged in Specification 1 of the Additional Charge as "building 2565" vice "building 3465," as charged, and contends a new CMO is required. The Government concurs, as do we. We direct corrective action in our decretal paragraph, and the issue requires no further discussion.

his Government Travel Card (GTC), apparently to pay for routine personal expenses. When Appellant's first sergeant later questioned him about these transactions, Appellant falsely claimed he had not seen his GTC since he last traveled for temporary duty in the spring of 2015.

In August 2015, Appellant was stopped by a civilian police officer while driving under the influence of alcohol. Although initially cooperative, Appellant became noncompliant, struggled briefly with the officer, and was placed in handcuffs. Appellant then spat on the hood of the officer's car.

In September 2015, Appellant reported for duty—specifically, to attend an Alcohol and Drug Abuse Prevention and Treatment Program appointment—under the influence of alcohol. Appellant's first sergeant took him first to security forces and then to the medical group to have his blood drawn. The first sergeant then took Appellant to Appellant's work area and told him to remain there pending further instructions. However, shortly thereafter Appellant departed his work center and walked several miles to his off-base residence, evading his superiors' efforts to find him. Appellant's command finally located him that evening at his residence.

On 15 January 2016, Appellant failed to report for duty, remaining at his residence and refusing to answer the door for a supervisor until the supervisor gained entry with the assistance of the apartment manager. After this incident, Appellant's first sergeant, with authority delegated by Appellant's commander, issued Appellant a written order restricting him to Joint Base Andrews. Specifically, the order restricted Appellant to a particular dormitory room on the base until the conclusion of his pending court-martial. The order included a number of exceptions, including: performing official duties; going to the dining facility for a meal; going to the base exchange or commissary; going to the base fitness center; obtaining medical care, including dental and mental health services; meeting with his defense counsel; attending religious services on base or meeting with a chaplain; and meeting with the inspector general. The order further provided that other travel required approval from the first sergeant. The stated reasons for the order were "concern for [Appellant's] well-being" and "concern that [he] may engage in further criminal misconduct, to include the failure to appear at [his] trial." The restriction was to last "until the conclusion of [Appellant's] pending trial" unless Appellant was notified it was lifted or extended.

On both 11 and 12 February 2016, Appellant failed to report on time for his fitness assessment. Nevertheless, he was permitted to travel to New York for emergency leave from 8 to 24 March 2016 related to the terminal illness and funeral of his mother. Appellant returned from this leave on time and without incident and remained under the restriction until his court-martial 23–26 May 2016.

The Defense filed a pretrial motion for appropriate relief requesting the military judge grant some unspecified amount of credit against Appellant's sentence because of the pretrial restriction. The Government opposed the motion. The military judge issued a written ruling denying the motion on 23 May 2016, the first day of Appellant's trial. The military judge concluded that the imposition of the restriction, contrary to the Defense's argument, was not a violation of Appellant's rights to due process, nor did it constitute illegal pretrial punishment, nor was Appellant entitled to administrative credit against his sentence for restriction short of physical restraint.

At trial, after accepting Appellant's pleas but before seating the court members, the military judge explored with the Defense whether Appellant had been subjected to illegal pretrial punishment forbidden by Article 13, UCMJ. Trial defense counsel affirmed that Appellant had not been so punished. Appellant agreed.

On 31 May 2016, five days after the conclusion of Appellant's court-martial, trial defense counsel sent the convening authority a "Request for Speedy Post-trial Processing & Termination of Unlawful Post-trial restraint, and to Defer Reduction in Rank." Therein, trial defense counsel asserted, *inter alia*, that Appellant was being unlawfully restricted to base pursuant to the adjudged sentence because that punishment had not yet been approved by the convening authority. Therefore, Appellant requested day-for-day administrative credit for each day of restriction beginning 26 May 2016, the date his trial ended, through 31 May 2016, the date of his request, as well as two-for-one credit for any further days of restriction on or after 1 June 2016 until convening authority action. On 3 June 2016, the convening authority denied the request for relief from unlawful post-trial restraint. The convening authority found Appellant "was not unlawfully restrained after the trial and there is no basis for this request."[3]

On 27 July 2016, pursuant to R.C.M. 1105, the Defense submitted matters for the convening authority's consideration prior to taking action on the results of Appellant's court-martial. Trial defense counsel requested, *inter alia*, that Appellant "be given six days of credit for the restriction to his dorm room imposed by [Appellant's] unit subsequent to the sentence." However, trial defense counsel acknowledged the convening authority's "predecessor in command disagreed with my assertion that [Appellant] was restricted to his dorm room for six days after his trial . . . ." Ultimately, the convening authority disapproved

---

[3] The convening authority also denied Appellant's request for deferment of his reduction in rank.

the entirety of Appellant's adjudged restriction to base for 60 days, and approved a reduction in rank to E-3 rather than E-2 "due to the member's good duty performance while awaiting trial."

## II. DISCUSSION

### A. Pretrial and Post-Trial Restraint

Appellant's first assignment of error incorporates three distinct issues, which we address in turn: the completeness of the record; unlawful pretrial restraint; and unlawful post-trial restraint.

#### 1. Completeness of the Record

##### *a. Additional Background*

The military judge directed that his written ruling on the Defense's motion for appropriate relief seeking sentence credit for Appellant's pretrial restraint would be marked as Appellate Exhibit XIV. However, this 23 May 2016 ruling was missing from the original record of trial. Instead, a duplicate copy of the military judge's 14 March 2016 ruling on a request for continuance (also inserted as Appellate Exhibit VII) was marked and inserted as Appellate Exhibit XIV.

On 22 September 2017, the Government moved to attach a copy of the military judge's 23 May 2016 ruling to the record of trial. This court granted the motion on 2 October 2017.

##### *b. Law*

A complete record of the proceedings and testimony shall be prepared in each special court-martial where the adjudged sentence includes, *inter alia*, a bad-conduct discharge. Article 54, UCMJ, 10 U.S.C. § 854. A complete record of trial includes all appellate exhibits, or an adequate substitute with the permission of the military judge. R.C.M. 1103(b)(2)(D)(v), (c)(1); *United States v. Gaskins*, 72 M.J. 225, 230 (C.A.A.F. 2013). However, neither Article 54, UCMJ, nor R.C.M. 1103 limits the discretion of a court of criminal appeals to "remedy an error in compiling a complete record." *Gaskins*, 72 M.J. at 230. The proper completion of post-trial processing and whether an omission from a record of trial is substantial are questions of law we review de novo. *United States v. Stoffer*, 53 M.J. 26, 27 (C.A.A.F. 2000); *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (citations omitted).

##### *c. Analysis*

Because the missing ruling has now been attached to the record of trial, the record includes all exhibits and is no longer incomplete. However, Appellant

contends he remains unfairly prejudiced by the error and his bad-conduct discharge should be set aside. We disagree.

First, Appellant argues that, because Appellate Exhibit XIV was missing from the record of trial when the convening authority took action, the convening authority was denied the opportunity to consider the entire record in accordance with R.C.M. 1107(b)(3)(B). Appellant acknowledges, however, that the convening authority is not *required* to consider the record of trial, much less every appellate exhibit therein. Moreover, both the Defense motion for appropriate relief and the Government response were included in the record of trial, and the transcript of the proceedings makes clear the military judge denied the motion. Therefore, the substance of Appellant's motion, the Government response, and the fact that the military judge denied the motion were all available to the convening authority. Furthermore, in contrast to Appellant's alleged *post*-trial restriction, the Defense clemency submission to the convening authority did not challenge the lawfulness of his pretrial restriction, which was the subject of the missing ruling. Appellant fails to explain how either his clemency submission or the convening authority's action might have been any different had the erroneous omission of the military judge's ruling not occurred.

Second, Appellant argues that the delay in adding the military judge's ruling to the record unfairly limited the time available to the Defense to review, research, and analyze the ruling to prepare his appeal. Appellant contends this placed him at a disadvantage with respect to the Government, which was responsible for creating a complete record. The court received Appellant's reply brief on 4 October 2017, 12 days after the Government provided the missing exhibit. The ruling is only five pages long. Moreover, the Defense motion and Government response were included in the record and address the same evidence and issues. We are confident that Appellant has had an adequate opportunity to prepare the issue and that our ability to fully consider the issue has not been adversely affected. Accordingly, we deny Appellant's request to set aside the bad-conduct discharge on this basis.

### 2. Pretrial Restraint

#### a. Law

We review de novo the question of whether an appellant is entitled to credit for a violation of Article 13, UCMJ. *United States v. Fischer*, 61 M.J. 415, 418 (C.A.A.F. 2005) (citing *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002)). "Article 13, UCMJ, prohibits two things: (1) the imposition of punishment prior to trial, and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused's presence for trial." *United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005).

R.C.M. 304(a) identifies various forms of pretrial restraint that may lawfully be imposed on a member's liberty before and during disposition of court-martial offenses. One authorized form of pretrial restraint is "restriction in lieu of arrest" by "oral or written orders directing the person to remain within specified limits." R.C.M. 304(a)(2). Any commissioned officer may order the pretrial restraint of an enlisted member, and a commanding officer may delegate such authority to noncommissioned officers within the officer's command. R.C.M. 304(b)(2)–(3). Such restraint may be ordered when there is probable cause—that is, a reasonable belief—that an offense triable by court-martial has been committed, that the person restrained committed it, and that the restraint ordered is required by the circumstances. R.C.M. 304(c). Pretrial restraint other than confinement is imposed by notifying the member orally or in writing of the restraint and its terms and limits. R.C.M. 304(d). Pretrial restraint lasts until the person is released by someone authorized to impose the restraint, a sentence is adjudged, the accused is acquitted of all charges, or all charges are dismissed. R.C.M. 304(g).

### b. Analysis

Appellant advances several theories as to why his pretrial restraint entitles him to sentence relief. We find none of them persuasive.

First, Appellant argues that his restriction to his quarters and certain other locations on base amounted to illegal pretrial punishment in violation of Article 13, UCMJ. He compares the terms of his restriction to the form of restriction that may be imposed on members as a result of nonjudicial punishment proceedings. *See Manual for Courts-Martial, United States* (2016 ed.), pt V, ¶ 5.c.(2). He further contends the excessive nature of the restriction indicates an intent to punish him. Notwithstanding the availability of restriction as a nonjudicial punishment under Article 15, UCMJ, R.C.M. 304 plainly authorizes non-punitive use of restriction as a form of pretrial restraint. *See* R.C.M. 304(f) ("Pretrial restraint is not punishment . . . .") Furthermore, in light of Appellant's history of alcohol-related offenses, unauthorized absence from duty, and evasion of contact with his superiors while so absent, the first sergeant's testimony regarding the purpose of the restriction, as well as the terms and implementation of the restriction itself, we are satisfied Appellant's command did not intend it as a punishment, but as a necessary means to control Appellant's misbehavior and ensure his presence for duty. *See United States v. Palmiter*, 20 M.J. 90, 95 (C.M.A. 1985) ("[W]e must look to the intent behind the imposition of the condition to resolve the punishment inquiry.")

Second, Appellant contends the restriction failed to comply with R.C.M. 304 itself because it was not "required by the circumstances." R.C.M. 304(c)(3). As described above, lawful pretrial restriction requires, *inter alia*, probable cause,

that is, a "reasonable belief" on the part of the individual imposing the restriction that the restraint ordered is required by the circumstances. *Id.* Based on the record before us, we are satisfied the first sergeant had such a reasonable belief. Appellant argues the fact that his 8–24 March 2016 release from restriction was unmarred by additional misconduct and the convening authority's approval of a reduction only to E-3 rather than E-2 in recognition of his "good duty performance while awaiting trial" indicate his restriction was unnecessary and excessive. However, the fact that Appellant's behavior from the imposition of the restraint until his trial was largely, although not entirely, free of additional misconduct does not prove the restriction was unnecessary. Rather, it suggests that these measures were effective in curbing his prior pattern of misconduct. Moreover, that his first sergeant temporarily lifted the restriction to permit him to travel for family purposes underscores the absence of punitive intent and that the restriction was reasonably applied.

Finally, Appellant appears to argue, as the Defense did in its pretrial motion, that the criteria for pretrial restriction under R.C.M. 304 are inadequate to protect Appellant's "basic due process rights guaranteed by the Fifth Amendment to the United States Constitution." Appellant contends the Rules for Courts-Martial provide no avenue to challenge his pretrial restriction before trial. The military judge rejected this argument, and so do we. First, we note Appellant's command correctly followed the procedures for implementing pretrial restriction in accordance with the rule. Second, as the military judge noted, Appellant might have resorted to Article 138, UCMJ, 10 U.S.C. § 938, to challenge his continued restriction if he felt it was unjustified.[4] Appellant cites no decision of this or any court that stands for the proposition that the pretrial restraint procedures established in R.C.M. 304 are unconstitutional, or even that such restriction short of physical restraint warrants credit against an accused's sentence. *Cf. United States v. Rendon*, 58 M.J. 221, 224 (C.A.A.F. 2003) (finding the procedural protections and sentence credit provided for pretrial confinement in R.C.M. 305 inapplicable to lesser forms of restraint). Like the military judge, we decline to impose additional procedural requirements by "judicial fiat." Accordingly, we find Appellant is not entitled to relief as a result of his pretrial restriction.

---

[4] Article 138, UCMJ, provides any servicemember "who believes himself wronged by his commanding officer, and who, upon application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and shall take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon." 10 U.S.C. § 938.

### 3. Post-Trial Restraint

Appellant renews the claim he made to the convening authority after trial that his restriction was unlawfully continued after his court-martial. Appellant correctly notes that pretrial restriction imposed under R.C.M. 304 "shall terminate" when a sentence is adjudged. R.C.M. 304(g). However, Appellant has offered no evidence, apart from the bare assertion in post-trial memoranda from his trial defense counsel to the convening authority, that his pretrial restriction was actually continued post-trial. After receiving trial defense counsel's complaint, the convening authority determined there was no unlawful post-trial restriction. The restriction order plainly informs Appellant that the restriction ends upon the conclusion of his court-martial unless he is notified of its extension. On this record, we find Appellant has failed to demonstrate a factual basis for relief for unlawful post-trial punishment.

## B. Sentencing Instruction

### 1. Additional Background

During sentencing proceedings, the military judge instructed the court members with respect to the effect of a bad-conduct discharge as follows:

> You are advised that the stigma of a punitive discharge is commonly recognized by our society. A punitive discharge will place limitations on employment opportunities and will deny the accused other advantages which are enjoyed by one whose discharge characterization indicates that he has served honorably. A punitive discharge will affect an accused's future with regard to his legal rights, economic opportunities, and social acceptability.

> This court may adjudge a bad conduct discharge. Such a discharge deprives one of substantially all benefits administered by the Department of Veterans Affairs and the Air Force establishment. However, vested benefits from a prior period of honorable service are not forfeited by receipt of a bad conduct discharge that would terminate the accused's current term of service. A bad conduct discharge is a severe punishment and may be adjudged for one who in the discretion of the court warrants severe punishment for bad conduct even though such bad conduct may not include the commission of serious offenses of a military or civil nature.

In the course of their deliberations on a sentence, the court members asked the military judge whether they could impose an under other than honorable conditions administrative discharge and whether Appellant's guilty plea would result in Appellant being a "convicted felon." The military judge answered

these questions without objection by either party. The president of the court then indicated he had an additional question, which led to the following exchange:

> PRES [President of the Court]: Could you please clarify for us, Your Honor, the periods of service when you talked about the bad conduct discharge only applying to this period of service; does it only apply to this specific enlistment, which I think started in maybe 2011 . . . [o]r does it apply across his service with the United States Air Force since his first enlistment?
>
> MJ [Military Judge]: I'm going to read that specific one to you and then if you need additional clarification I may just have to recess to get my wording correctly for you.
>
> This court may adjudge a bad conduct discharge. Such a discharge deprives one of substantially all benefits administered by the Department of Veterans Affairs and the Air Force establishment. I think this is the portion that the members are asking me about.
>
> PRES: Yes, sir, I think so.
>
> MJ: However, vested benefits from a prior period of honorable service are not forfeited by receipt of a bad conduct discharge that would terminate the accused's current term of service.
>
> Sir, does that answer your question?
>
> PRES: No, that causes it.

The military judge then held an Article 39(a), UCMJ, session outside the presence of the court members. After a brief discussion with counsel for both sides, the military judge took a recess during which he composed the following proposed instruction:

> You are advised that the accused is a second-term Airman, however, no evidence is before you regarding the characterization of this prior discharge. You are further advised that the stigma of a punitive discharge is commonly recognized in our society and thus it is the most severe punishment this court may adjudge. In deciding [ ] on whether a punitive discharge is warranted in this case, your focus should be on whether the offense committed by this accused and all the other evidence, both mitigating and aggravating, warrant such severe punishment, not on other matters not properly before this court-martial.

The military judge asked counsel for both sides whether there were objections. Trial defense counsel responded:

> DC [Defense Counsel]: Your Honor, just in terms of the . . . the very beginning instruction there was just one thing that caught my attention. It was the phrase "second-term Airman" it maybe suggests a certain number of enlistments. Just maybe rephrase to "he is no longer serving out his first enlistment." And I don't know if that makes it awkward. I know the negatives here, we're all cautious about the negatives.
>
> MJ: Defense Counsel, instead of "you are advised," "as the evidence before you indicates the accused is a second-term Airman"?
>
> DC: That's fine, Your Honor.

The military judge proceeded to give the following instruction to the court members:

> As the evidence before you indicates the accused is a second-term Airman; however, no evidence is before you regarding the characterization of this prior discharge. You are further advised that the stigma of a punitive discharge is commonly recognized in our society and thus, it is the most severe punishment this court may adjudge. In deciding on whether a punitive discharge is warranted in this case, your focus should be on whether the offense committed by this accused and all the other evidence, both mitigating and aggravating warrant such severe punishment, not on other matters not properly before this court-martial.

The court members indicated they had no further questions. Counsel for both parties indicated they had no objections to the instructions, and the members returned to their deliberations.

### 2. Law

Whether a panel was properly instructed is a question of law we review de novo. *United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017) (citations omitted). "Failure to object to an instruction given or omitted waives the objection absent plain error." *United States v. Pope*, 69 M.J. 328, 333 (C.A.A.F. 2011) (citing R.C.M. 920(f)). "Plain error is established when: (1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007).

A military judge has substantial discretion in deciding whether to give an instruction to court members. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010). A military judge is required to tailor instructions to the evidence and issues present in a particular case. *United States v. Staton*, 68 M.J. 569, 572 (A.F. Ct. Crim. App. 2009).

Forfeiture is the failure to timely assert a right, whereas waiver is the intentional relinquishment of a known right. *Gladue*, 67 M.J. at 313. Appellate courts will review forfeited issues for plain error, but waiver extinguishes an appellant's right to raise an issue on appeal. *Id.* (citing *Harcrow,* 66 M.J. at 156).

### 3. Analysis

Appellant contends that the military judge's additional instruction that "the evidence before you indicates the accused is a second-term Airman" was plainly erroneous. In Appellant's view, this elaboration upon the standard punitive discharge instructions contained in the *Military Judge's Benchbook (Benchbook)*[5] in response to the president's question "present[ed] to the members that the defendant has already vested benefits," when in fact Appellant's specific post-service benefits were not predictable with any degree of accuracy and the entire topic of collateral consequences of the court-martial was not a proper subject for the members' consideration in deciding a sentence. The Government counters that Appellant waived this issue by trial defense counsel's failure to object to the instruction given, and that, in any event, the instruction was not erroneous.

Assuming *arguendo* that trial defense counsel's failure to object to the instruction provided to the members did not waive this issue, we find no plain error. We note the military judge provided the standard punitive discharge instructions from the *Benchbook*. When the members asked a question regarding the effect of a punitive discharge, the military judge repeated the relevant portion of those instructions. When that failed to satisfy the members, the military judge crafted an accurate further instruction tailored to the facts of the case. Moreover, it was consistent with his prior instructions, and it also advised the court members to focus on whether a punitive discharge was an appropriate punishment in this case based on the offenses and the evidence that was before them, "not on other matters not properly before this court-martial." That the military judge might properly have exercised his discretion to give a different instruction, or declined to provide further instructions at all, does not render the instruction he gave improper. We are not persuaded that the instruction

---

[5] Department of the Army Pamphlet 27–9, at 70–72 (10 Sep. 2014).

given was clearly erroneous or that it materially prejudiced Appellant's substantial rights. *See Pope*, 69 M.J. at 333.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.[6] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[6] As noted above, the CMO contains an error with respect to Specification 1 of the Additional Charge, where the CMO incorrectly lists "building 2565" rather than "building 3465" as the location from which Appellant absented himself. We direct the publication of a corrected CMO to remedy this error.