UNITED STATES, Appellee

v.

Tracy P. REGAN, Captain
U.S. Air Force, Appellant

No. 05-0280

Crim. App. No. 35419

United States Court of Appeals for the Armed Forces

Argued November 2, 2005

Decided January 27, 2006

CRAWFORD, J., delivered the opinion of the Court, in which
GIERKE, C.J., and EFFRON, BAKER, and ERDMANN, JJ., joined.


Counsel

For Appellant:  Captain Anthony D. Ortiz (argued);  Colonel
Carlos L. McDade and Captain Christopher S. Morgan (on brief).

For Appellee:  Major Amy E. Hutchens (argued); Lieutenant
Colonel Robert V. Combs, Lieutenant Colonel Gary F. Spencer,
Major Steven R. Kaufman, and Major Matthew S. Ward (on brief).

Military Judge:  Sharon A. Shaffer

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Regan, No. 05-0280/AF

Judge CRAWFORD delivered the opinion of the Court.

Pursuant to her pleas, Appellant was convicted of three specifications of use of cocaine and one specification of possession of cocaine in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). The convening authority approved the sentence of a dismissal and nine months of confinement. The Court of Criminal Appeals affirmed the findings and sentence. We granted review of the following issue on June 15, 2005:

> WHETHER APPELLANT SHOULD HAVE BEEN AWARDED ADDITIONAL
> CONFINEMENT CREDIT FOR NONCOMPLIANCE WITH R.C.M. 305,
> PURSUANT TO UNITED STATES v. RENDON, 58 M.J. 221
> (C.A.A.F. 2003).

We hold that the military judge did not err in declining to award additional credit under Rule for Courts-Martial (R.C.M.) 305, Manual for Courts-Martial, United States (2005 ed.) (MCM).[1] Prior to declining that credit, the military judge granted a defense motion and gave Appellant credit for restriction tantamount to confinement.

FACTS

After Appellant tested positive a third time for the use of cocaine, the acting commander, Major Mary Nachreiner, initially

_____

[1] The current versions of all MCM provisions cited are identical to the ones in effect at the time of Appellant's court-martial, unless otherwise indicated.

2

discussed the test results with Colonel (Dr.) Morgan of Life Skills and discussed the various options that were available. At a later time, Major Nachreiner discussed the matter with the commander who was on leave. It was after these discussions that the acting commander decided to order Appellant into confinement. Before placing Appellant into pretrial confinement, the acting commander wanted to offer Appellant the opportunity to get help for her drug problem. Major Nachreiner told Appellant that she was going to order Appellant into confinement, but if Appellant was willing, the commander would send Appellant to an inpatient treatment program at St. Elizabeth's Hospital before proceeding with the pretrial confinement. The military judge found that it was made clear to Appellant that if she did not elect treatment, she would be placed in pretrial confinement.

The following exchange occurred during the session pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a)(2000), between the military judge and Major Nachreiner regarding Appellant's election:

> A: I know we offered the option of treatment, that it would be solely her voluntary choice, that this was voluntary admission. However, if she didn't choose a voluntary admission for treatment, then she would go to pretrial confinement.
>
> [MJ]: So there was an ultimatum, either go to treatment or go to pretrial confinement. That's what I'm hearing.

A:  It was still her option in a sense.  You know, if a person really wanted to treatment [sic], earnestly wanted treatment, I would have thought it would have been an obvious choice for treatment, which she did choose.

[MJ]:  I guess my question is --

A:  We weren't forcing her into treatment, but we did say if you don't choose treatment, the secondary alternative is pretrial confinement.  She could have said, "No, I don't want treatment.  I'll go to confinement."  That would have been her option.  You know, if someone didn't want treatment, they may not have chosen that.

[MJ]:  Well, if there was such a concern with her positive [urinalysis] that was rather high on the third one and your sole purpose was concern for her health and well-being and getting treatment, then why not just phrase treatment alone instead of the ultimatum of either here or pretrial confinement?  It's one or the other.

A:  She's an officer.  We wanted to give her the choice.  We felt like, as you seem to indicate, it seemed like an obvious choice.  I would rather choose a program to help myself than I would to go to confinement directly.  We didn't force that choice on her.

[MJ]:  What it sounds like, though, is there was going to be some sort of restriction, either confining her in a hospital or confining her in a jail.

The acting commander wanted to allow Appellant to choose between drug treatment and pretrial confinement.  Appellant made her election to enter the treatment program.  She commenced the treatment program on "11 July 2002 and remained there until 2 August 2002 when she was transported to pretrial confinement."

4

During the treatment program, Major Nachreiner received a call that Appellant was not cooperating with her treatment group at the treatment facility.  The acting commander told the staff member that Appellant was given a choice of "treatment or pretrial confinement."  It was made clear to Appellant that if she opted to quit the program, she would be placed in pretrial confinement.  There is no indication in the testimony or evidence presented that the acting commander sent Appellant to inpatient treatment to punish her.  Although the commander had decided to order Appellant into pretrial confinement, the acting commander first wanted to help Appellant by providing her the opportunity to help herself.

While in the program, Appellant was allowed to leave the treatment facility with escorts.  In addition to the escort program, there were secure doors to the facility, and Appellant was limited as to when she could go to the gift shop.  Smoke breaks were very limited.  In the third week of treatment, Appellant was allowed to take breaks with other individuals at the facility.  Appellant had supervised visits because of the disclosure of her supplier:

> On the weekend prior to her completion of the
> program, the accused requested a pass for three hours
> to have dinner with her daughter.  However, based on
> concerns regarding her behavior in group therapy, the
> integrity of the program, the risk of relapse, and
> [the] implication of her husband in drug use with
> her, and also the risk of flight, this request was

5

> denied. This was the only time the accused asked for
> a pass.

Upon Appellant's release from the treatment facility on August

2, 2002, she was placed in pretrial confinement.

> The military judge found that:

> [T]he accused was told that she had two options,
> either inpatient treatment at St. Elizabeth's Hospital
> or pretrial confinement. Although the accused
> apparently indicated that she wanted treatment and had
> discussed it with her husband, the command made it
> clear to her that, if she did not elect treatment, she
> would be placed into pretrial confinement. She opted
> for inpatient treatment.

> . . . [A]t no time did the command discuss
> involuntarily placing the accused into a treatment
> facility, which would also, under our AFIs [Air Force
> Instructions], require a notice and a hearing prior to
> placement into [a] treatment facility. The options
> were merely to voluntarily check yourself into the
> hospital, or we will check you into pretrial
> confinement.

The military judge noted that this case was "unique," because

"this particular accused was given . . . . no choice. Inpatient

treatment or confinement is, in essence, no choice at all."

In her essential findings, the military judge concluded

that, based on "the totality of the conditions imposed" and "the

facts and circumstances" of this case, the time Appellant was in

the treatment facility (twenty-one days) amounted to restriction

tantamount to confinement and determined that Appellant was

entitled to Mason[2] credit. The military judge made this conclusion based solely on the fact that Appellant was "not given a choice" because while addressing the issue of whether Appellant was entitled to additional credit for a violation of R.C.M. 305 requirements, the military judge stated, "this is not a scenario where the restriction, if you will, wasn't tantamount to confinement." The military judge further stated on this issue, "[i]f this was a different scenario, I wouldn't even be finding [that inpatient treatment] was restriction tantamount to confinement." The military judge concluded that the restrictions placed on Appellant by the hospital were for legitimate medical reasons and "are not the same restrictions . . . the court envisioned that would necessitate a 305(k) review." The military judge then denied the defense motion for additional credit under R.C.M. 305(k) for failure to comply with the requirements of R.C.M. 305.

DISCUSSION

In United States v. Rendon, 58 M.J. 221 (C.A.A.F. 2003), the Court held that R.C.M. 305 applies to "pretrial confinement" and that rule applies to "restriction tantamount to confinement only when the conditions and constraints of that restriction

---

[2] United States v. Mason, 19 M.J. 274 (C.M.A. 1985) (day for day credit is given for pretrial restriction equivalent to confinement).

constitute physical restraint, the essential characteristic of confinement."  58 M.J. at 224, 225.  To come within the scope of R.C.M. 305, then, "the conditions or terms of the restriction must constitute physical restraint depriving an accused of his or her freedom."  Id. at 224.  "We find no evidence that the President intended the procedural protections or the credit provided in R.C.M. 305 to apply to anything other than the physical restraint attendant to pretrial confinement."  Id. (emphasis added).  Thus, restriction tantamount to confinement does not necessarily trigger the application of R.C.M. 305.

In this case, Appellant was not subject to physical restraint incidental to pretrial confinement, but was treated as a patient, not a prisoner.  There was no evidence that she was treated differently from other patients for a nonmedical purpose, but that her restrictions were imposed for medical reasons.  This restriction could have been broken at any time. Her treatment was voluntary and there was no evidence that Appellant remained in the hospital against her will.  In fact, there was evidence she wanted to receive the treatment.

We hold that the military judge did not err in refusing to grant additional credit pursuant to R.C.M. 305(k).  The conditions of Appellant's inpatient stay at St. Elizabeth's Hospital did not amount to "physical restraint characteristic of confinement," thus entitling Appellant to credit because of a

violation of R.C.M. 305.  The assistance one receives during an inpatient drug treatment program is far different than the physical restraint imposed when an individual is placed in pretrial confinement.  Clearly, as noted by the military judge, the "parameters" set by the hospital are for "very legitimate medical reasons, to prevent relapse or a person running out and getting additional drugs."  Thus, there was no error in failing to give additional credit under R.C.M. 305(k).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.