# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40482**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Randy B. GILES, Jr.**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 23 December 2024

————————————

*Military Judge*: Charles G. Warren.

*Sentence*: Sentence adjudged 23 March 2023 by GCM convened at Sheppard Air Force Base, Texas. Sentence entered by military judge on 19 April 2023: Bad-conduct discharge, confinement for 30 days, and forfeiture of $1,917.00 pay per month for one month.

*For Appellant*: Captain Samantha M. Castanien, USAF.

*For Appellee*: Lieutenant Colonel J. Peter Ferrell, USAF; Major Brittany M. Speirs, USAF; Captain Heather R. Bezold, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge GRUEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

The military judge found Appellant guilty, in accordance with his pleas, of one specification of violating a lawful general order, one specification of negligent dereliction of duty, one specification of willfully damaging military property, and one specification of aggravated arson, in violation of Articles 92, 108, and 126, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 908, 926.[1] A general court-martial composed of officer and enlisted members sentenced Appellant to a bad-conduct discharge, confinement for 30 days, and forfeiture of $1,917.00 pay per month for one month. The convening authority took no action on the findings or sentence. Concurrent with entering the judgment, the military judge applied pretrial confinement credit and judicially awarded confinement credit to "set aside" the adjudged confinement and "adjudged and automatic forfeitures of pay."

Appellant raises four issues on appeal: (1) whether Appellant is entitled to relief for being involuntarily restricted to an inpatient mental health facility after his failed suicide attempt; (2) whether Appellant was unlawfully kept in pretrial confinement in violation of Rule for Courts-Martial (R.C.M.) 305 when the trigger for his misconduct—a desire to commit suicide via self-immolation—was no longer present; (3) whether the Government violated Appellant's R.C.M. 707 right to speedy trial; and (4) whether the adjudged bad-conduct discharge is inappropriately severe. In addition, although not raised as an assignment of error, we consider whether Appellant is entitled to relief for unreasonable appellate delay.

With respect to issue (2), Appellant concedes trial defense counsel waived the issue, and we agree; we have carefully considered Appellant's argument that this court should grant relief notwithstanding his waiver, and we conclude it warrants neither discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With respect to the remaining issues, we find no error that materially prejudiced Appellant's rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant joined the Air Force in April 2022. After completing basic training, he went to Sheppard Air Force Base (AFB), Texas, for technical training. In early August 2022, Appellant told his friend and fellow trainee, Airman First Class (A1C) JM, that Appellant was planning to "burn down the squadron." A1C JM later testified he understood this comment to mean Appellant

---

[1] Unless otherwise noted, other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

was talking about burning down their dormitory building, and that "[i]t was kind of like obvious that his plan was suicide." A1C JM did not report this comment at the time because "it was normal for [Appellant] to say stuff like that."

On 16 August 2022, Appellant's chain of command issued him a letter of counseling (LOC) for misconduct. After he received the LOC, Appellant spoke with A1C JM. Appellant seemed "mad" and told A1C JM "it's going to happen that night."

A1C JM reported Appellant's statement to an instructor because "[i]t didn't really seem like a joke anymore." Appellant was called in to speak with some of the instructors. He denied that he intended to harm himself or burn the dormitory building. Nevertheless, Appellant's chain of command sent him to speak with mental health providers on Sheppard AFB. There, Appellant again denied that he intended to harm himself or start a fire. Appellant was permitted to return to his dormitory.

Late on the night of 16 August 2022, when Appellant was alone in his dormitory room, he pushed a desk against the door and tied the doorknob to a sink in order to prevent the door from being opened. Appellant covered the smoke detector in his room with tape. Appellant put lighter fluid on his bed and on his head. He attempted to commit suicide by setting his head on fire with a match, but only burnt his tongue and lips. Appellant then set fire to his bed, drank some of the lighter fluid, and lay down on his roommate's bed in an attempt to kill himself by smoke inhalation and intoxication.

According to records entered by the Government, over 500 Airmen were living in the dormitory at the time. Smoke escaped from Appellant's room and set off smoke detectors in some of the neighboring rooms. Someone activated the fire alarm and the other residents evacuated the dormitory. Sheppard AFB firefighters responded within seven minutes of the alarm and identified Appellant's room as the source of the smoke. They were able to force their way into the room, extinguish the fire, and remove the unconscious Appellant. When the firefighters resuscitated Appellant, he told them he started the fire because he wanted to kill himself.

Appellant suffered significant injuries and was in a medically induced coma for approximately one week after the fire. He was released from the hospital

after approximately two weeks. No one else suffered serious injury from the fire.[2] The cost of repairing the dormitory room amounted to $5,784.08.

On 8 September 2022, Appellant's commander ordered him into pretrial confinement in the Archer County Jail. On 19 September 2022, Appellant submitted a memorandum to his commander stating he would "voluntarily admit" himself to an inpatient mental health treatment program. That same day, Appellant's commander ordered his release from pretrial confinement, contingent on his voluntarily entering inpatient treatment, and Appellant entered an inpatient mental health treatment facility.

On 30 September 2022, Appellant's commander preferred four specifications against him: aggravated arson in violation of Article 126, UCMJ, by setting his dormitory room on fire; willfully damaging military property in violation of Article 108, by setting his dormitory room on fire; violating a lawful general order in violation of Article 92, UCMJ, by blocking the door to his room with furniture in violation of the 82d Training Wing Military Standards Training Manual; and negligent dereliction of duty in violation of Article 92, by tampering with the smoke detector in his dormitory room.

During Appellant's inpatient treatment, at the Defense's request the military judge ordered an inquiry into Appellant's mental capacity and mental responsibility pursuant to R.C.M. 706. The inquiry determined that at the time of the alleged criminal conduct Appellant suffered from a severe mental disease or defect, specifically a major depressive disorder and schizoid personality disorder. However, the inquiry further determined Appellant was nevertheless able to appreciate the nature, quality, and wrongfulness of his conduct, and was able to cooperate intelligently in his defense.

On 28 February 2023, Appellant was discharged from treatment and his commander ordered him back into pretrial confinement, where Appellant remained until his court-martial concluded on 23 March 2023.

---

[2] Another dormitory resident, A1C CW, testified during sentencing proceedings. A1C CW awoke when the fire alarm in his room went off; his room was "pretty hazy" with smoke. After he evacuated the building, A1C CW was "coughing quite a bit," as were some of the other evacuated Airmen. His cough persisted for a couple of days. In addition, A1C CW's classes for the following day were cancelled, and he and some of the other Airmen had to relocate to a different building for a period of time.

## II. DISCUSSION

### A. Sentence Credit for Inpatient Mental Health Treatment

#### 1. Additional Background

On 19 December 2022, the Defense filed a motion for appropriate relief seeking day-for-day confinement credit for every day he spent in inpatient mental health treatment, citing *United States v. Allen*, 17 M.J. 126, 128 (C.M.A. 1984). Trial defense counsel contended Appellant's offer to enter inpatient mental health treatment was not truly voluntary because he "had no real choice . . . if he wanted to forgo jail . . . ." The defense motion further noted Appellant's commander had conditioned Appellant's 19 September 2022 release from pretrial confinement on Appellant's "voluntary admission into at least a 30-day inpatient treatment program" at a particular medical facility.

The Government opposed the defense motion, contending Appellant made a voluntary decision, there was no evidence Appellant had been treated any differently than other patients at the mental health facility, and any restraints on Appellant's liberties at the facility were the result of the facility's "care and responsibility toward him as a patient."

At the court-martial, Appellant provided limited testimony for purposes of the motion for appropriate relief. Appellant testified, *inter alia*, that prior to 26 October 2022 he was allowed to leave the main building to eat at a cafeteria in a neighboring building that was also part of the facility.[3] However, after 26 October 2022 he was restricted to the main building after he expressed a specific suicidal plan to kill himself with a law enforcement officer's firearm. Appellant remained restricted to the building until his release from inpatient treatment and return to pretrial confinement on 28 February 2023. Appellant also testified to the effect that he would not have volunteered to enter inpatient treatment on 19 September 2022 if he were not in pretrial confinement.

During argument on the motion, the military judge permitted the Defense to make "an oral addendum" to their motion and to request relief for pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813, in addition to pretrial confinement credit pursuant to *Allen*. During trial defense counsel's argument, she "concede[d] solely for the restrictions tantamount to confinement that [Appellant] would not be entitled to credit for that one month" before he was placed on building restriction on 26 October 2022, but contended

---

[3] Appellant further explained that some unrestricted patients were also able to participate in certain "outings" away from the facility, but as of 26 October 2022 Appellant had not progressed in his treatment to a point where he was permitted to do so.

Appellant should get day-for-day credit from that date until his treatment ended on 28 February 2023.

The military judge entered an oral ruling denying the Defense's request for *Allen* credit, and granting in part and denying in part their request for relief for violation of Article 13, UCMJ. In his findings of fact, the military judge summarized some of Appellant's living conditions in the inpatient treatment program as follows:

> While there, [Appellant] had access to religious and medical services. Members of his unit were allowed to visit, although, members of his family were not. He had limited telephone privileges so long as he was participating in group therapy. He was assigned to a room with a roommate, not to a cell. There were no lockdown times at the facility. He had access to limited personal property, including paper, documents, arts and crafts, and access to the property that he brought with him to the [ ] facility.

> His building restriction on 26 October [2022] was based solely upon his status as a suicide ideation and not upon his status as a pretrial -- as someone awaiting trial as an accused. In short, the accused was not treated as a pretrial confinee while at the [ ] confinement [sic] facility but as a patient.

The military judge found Appellant's living conditions at the mental health facility "were not tantamount to confinement," and "[t]herefore no R.C.M. 305 violation occurred." However, he further found Appellant's chain of command effectively induced him to involuntarily enter inpatient mental health treatment, without following the procedures set forth in Department of Defense and Air Force regulations and Texas state law for initiating such treatment involuntarily.[4] The military judge explained,

> the inducement to [Appellant] to enter into the [ ] mental health facility was against [Appellant's] will, and outside of -- was the functional equivalent of an involuntary commitment of the accused to the [mental health] facility, in violations of the Air Force regulation and DoD regulation. Given the violation of regulations, the Court finds an Article 13[, UCMJ,] violation. The meaningful relief the Court provides is one day of confinement

---

[4] *See* Tex. Health & Safety Code § 571.002 et seq.; Department of Defense Instruction 6490.04, *Mental Health Evaluations of Members of the Military Services* (4 Mar. 2013, Incorporating Change 1, Effective 22 Apr. 2020); Air Force Instruction 44-172, *Mental Health* (13 Nov. 2015).

credit for every two days [Appellant] spent at the [mental health] facility against his will.

The Court wishes to emphasize this should not be interpreted as a criticism of the command. Under the circumstances, it is manifestly clear [Appellant] needed mental health treatment. The question was, what was the right way to go about that? Here, the Court finds the command was trying to do the right thing the wrong way.

In total, the military judge awarded Appellant 36 days of pretrial confinement credit (*Allen* credit) and 81 days of confinement credit for violation of Article 13, UCMJ. The military judge explained Appellant's involuntary entry into inpatient treatment was "tantamount to restriction." He explained he found "useful" the R.C.M. 1003(b)(5) conversion formula whereby one day of confinement is equivalent to two days of restriction. *See* R.C.M. 305(k) ("[I]f the confinement adjudged is insufficient to offset all the credit to which the accused is entitled, the credit shall be applied against . . . restriction using the conversion formula under R.C.M. 1003(b)(5) . . . ."). Thus, the military judge awarded one day of confinement credit for every two days of the entire 162-day period Appellant spent in inpatient treatment.

**2. Law**

### *a. Credit for Pretrial Restriction Tantamount to Confinement*

In general, an accused is entitled to day-for-day confinement credit against his or her sentence for every day spent in pretrial confinement pursuant to R.C.M. 305. *See Allen*, 17 M.J. at 128–29. In *United States v. Mason*, 19 M.J. 274 (C.M.A. 1985), the United States Court of Military Appeals "extended *Allen* credit to situations involving pretrial restriction that is 'tantamount' or 'equivalent' to confinement, but that do not involve actual incarceration." *United States v. King*, 58 M.J. 110, 113 (C.A.A.F. 2003) (citing *Mason*). We review de novo whether an appellant was subjected to pretrial restrictions tantamount to confinement, based on the totality of the conditions imposed. *Id.* (citations omitted). In making this determination, factors to consider include

the nature of the restraint (physical or moral), the area or scope of the restraint (confined to post, barracks, room, etc.), the types of duties, if any, performed during the restraint (routine military duties, fatigue duties, etc.), and the degree of privacy enjoyed within the area of restraint. Other important conditions which may significantly affect one or more of these factors are: whether the accused was required to sign in periodically with some supervising authority; whether a charge of quarters or other authority periodically checked to ensure the accused's presence;

> whether the accused was required to be under armed or un-
> armed escort; whether and to what degree [the] accused was al-
> lowed visitation and telephone privileges; what religious, medi-
> cal, recreational, educational, or other support facilities were
> available for the accused's use; the location of the accused's
> sleeping accommodations; and whether the accused was allowed
> to retain and use his personal property (including his civilian
> clothing).

*Id.* (quoting *United States v. Smith*, 20 M.J. 528, 530 (A.C.M.R. 1985)) (altera-
tion in original).

### b. Credit for Violations of Article 13, UCMJ

Article 13, UCMJ, provides in part: "No person, while being held for trial,
may be subjected to punishment or penalty other than arrest or confinement
upon the charges pending against him, nor shall the arrest or confinement im-
posed upon him be any more rigorous than the circumstances require to insure
his presence . . . ." The United States Court of Appeals for the Armed Forces
(CAAF) has "interpreted Article 13[, UCMJ,] to prohibit two types of activities:
(1) the intentional imposition of punishment on an accused prior to trial, i.e.,
illegal pretrial punishment; and (2) pretrial confinement conditions that are
more rigorous than necessary to ensure the accused's presence at trial, i.e.,
illegal pretrial confinement." *United States v. Fischer*, 61 M.J. 415, 418
(C.A.A.F. 2005) (citations omitted). With regard to the first of these prohibi-
tions, the CAAF has explained:

> [T]he question of whether particular conditions amount to pun-
> ishment before trial is a matter of intent, which is determined
> by examining the purposes served by the restriction or condition,
> and whether such purposes are "reasonably related to a legiti-
> mate governmental objective."

> [I]n the absence of a showing of intent to punish, a court must
> look to see if a particular restriction or condition, which may on
> its face appear to be punishment, is instead but an incident of a
> legitimate nonpunitive governmental objective.

*Howell v. United States*, 75 M.J. 386, 393 (C.A.A.F. 2016) (quoting *United
States v. Palmiter*, 20 M.J. 90, 95 (C.M.A. 1985)) (additional citation omitted).
With regard to the second Article 13, UCMJ, prohibition, "[c]onditions that are
sufficiently egregious may give rise to a permissive inference that an accused
is being punished, or the conditions may be so excessive as to constitute pun-
ishment." *United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005) (citations
omitted).

"The question whether appellant is entitled to credit for a violation of Article 13[, UCMJ,] is a mixed question of fact and law." *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002) (citations omitted). "The burden is on [an] appellant to establish entitlement to additional sentence credit because of a violation of Article 13." *Id.* (citing R.C.M. 905(c)(2)). "We will not overturn a military judge's findings of fact, including a finding of no intent to punish, unless they are clearly erroneous. We will review de novo the ultimate question whether an appellant is entitled to credit for a violation of Article 13[, UCMJ]." *Id.* (citations omitted).

### c. Application of Pretrial Confinement or Punishment Credit

"The proper applications of credit for illegal pretrial punishment and lawful pretrial confinement are questions of law, reviewed de novo." *United States v. Spaustat*, 57 M.J. 256, 260 (C.A.A.F. 2002) (citation omitted). R.C.M. 305(k) provides a military judge may award credit against the adjudged sentence for violations of R.C.M. 305 pretrial confinement procedures, and "for pretrial confinement that involves an abuse of discretion or unusually harsh circumstances." Such credit may be applied against adjudged confinement, hard labor without confinement, fines, and forfeiture of pay, in that order; however, "[t]he credit shall not be applied against any other form of punishment." R.C.M. 305(k).

"[T]he primary mechanism for addressing violations of Article 13, UCMJ, has been confinement credit." *United States v. Zarbatany*, 70 M.J. 169, 174 (C.A.A.F. 2011). However, "R.C.M. 305(k) does not limit the availability of other remedies under Article 13, UCMJ," to include potentially setting aside a punitive discharge. *Id.* at 175. "[M]eaningful relief for violations of Article 13, UCMJ, is required, provided such relief is not disproportionate in the context of the case, including the harm an appellant may have suffered and the seriousness of the offenses of which he was convicted." *Id.* at 177.

### 3. Analysis

Appellant contends he is entitled to additional relief based on his inpatient mental health treatment for two reasons: (1) he is entitled to *Mason* credit because his inpatient treatment was tantamount to confinement; and (2) he is entitled to additional Article 13, UCMJ, relief for being involuntarily induced to undergo inpatient mental health care. We address each contention in turn.

### a. Mason *Credit for Conditions Tantamount to Confinement*

Appellant argues he was forced to make a choice between remaining in pretrial confinement and inpatient mental health treatment, which at the time he did not want, and therefore his treatment was involuntary. Moreover, during his treatment he was subjected to significant restrictions on his liberty which were tantamount to confinement. Accordingly, Appellant reasons, he is

entitled to 162 days of day-for-day *Mason* credit against his sentence, which should be applied to offset his bad-conduct discharge.

As an initial matter, the Government contends that during trial defense counsel's motion argument, she waived Appellant's entitlement to *Mason* credit for the period from 19 September 2022 until 26 October 2022. We agree. Reviewing the question of waiver de novo, we find trial defense counsel intentionally relinquished such a claim when she conceded Appellant "would not be entitled to credit" on the basis of restrictions tantamount to confinement for that period of time, before he was restricted to the building following his suicidal ideation. *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)).

We further agree with the military judge that Appellant is not entitled to *Mason* credit for any period of his inpatient treatment. Although Appellant was subject to significant limitations during this time, these were imposed by the mental health facility for bona fide medical purposes. The military judge found Appellant was treated the same as other patients, and this finding is supported by the evidence and not clearly erroneous. In other words, during his inpatient treatment Appellant was not experiencing pretrial restraint tantamount to confinement imposed by military authorities; he was undergoing treatment by mental health providers as a patient subject to medically indicated conditions necessary to promote his health and safety, on the same basis as any other patient, civilian or military.

Appellant relies on the CAAF's opinion in *United States v. Regan*, 62 M.J. 299 (C.A.A.F. 2006), for his contention that he was "not given a choice" and his "involuntary" entry into inpatient treatment warrants *Mason* credit. However, Appellant misconstrues the significance of *Regan*. In that case, the appellant's acting commander told the appellant she was going to order the appellant into pretrial confinement, but if the appellant was willing she would send the appellant to inpatient treatment for substance abuse "before proceeding with the pretrial confinement." *Id.* at 300. The appellant elected to enter the treatment program. *Id.* After three weeks, the appellant left the program and entered pretrial confinement. *Id.* at 300–01. The CAAF noted the military judge found that under the "unique" facts of the case, the appellant's choice between "[i]npatient treatment or confinement was, in essence, no choice at all," and awarded 21 days of *Mason* credit for conditions tantamount to confinement. *Id.* at 301. However, this ruling by the military judge in *Regan* was not the matter before the CAAF. The issue on appeal was the military judge's denial of any additional credit pursuant to R.C.M. 305(k) for alleged violations of R.C.M. 305 pretrial confinement requirements. *Id.* As to that issue, the CAAF found no error, finding the appellant's inpatient treatment was not "pretrial

confinement" for purposes of R.C.M. 305, and notably distinguishing between "inpatient drug treatment" and pretrial confinement:

> The assistance one receives during an inpatient drug treatment program is far different than the physical restraint imposed when an individual is placed in pretrial confinement. Clearly, as noted by the military judge, the "parameters" set by the hospital are for "very legitimate medical reasons, to prevent relapse or a person running out and getting additional drugs."

*Id.* at 302. Thus, the CAAF made no determination as to the correctness of the military judge's award of *Mason* credit in *Regan*; the actual holding of *Regan* tends to underscore that bona fide medical treatment is of an essentially different character than pretrial confinement. *See id.*

Appellant's citation to this court's unpublished opinion in *United States v. White*, No. ACM 39600, 2020 CCA LEXIS 235 (A.F. Ct. Crim. App. 15 Jul. 2020) (unpub. op.), is similarly uncompelling. That opinion mentions that the appellant "involuntarily spent 17 days in an inpatient mental health treatment program. The parties at trial, along with the military judge, agreed the conditions at this facility were tantamount to confinement and warranted pretrial confinement credit." *Id.* at *9–10. However, this was merely background information related to the actual issue on appeal, which was whether the appellant's placement on medical and suicide watch during his pretrial confinement—after he was released from inpatient mental health treatment—violated Article 13, UCMJ. *Id.* at *10–12. Similar to *Regan*, the court made no ruling as to the correctness of awarding *Mason* credit for appellant's prior inpatient treatment. Moreover, the situation in *White* was different from Appellant's case in that the appellant's treatment was explicitly involuntary, and the Government concurred in the awarding of *Mason* credit. *Id.* at *10–11.

Accordingly, we conclude Appellant is not entitled to *Mason* credit as a result of his inpatient mental health treatment.

### b. Additional Relief for Violation of Article 13, UCMJ

As described above, the military judge found Appellant's command violated Article 13, UCMJ, by inducing him to agree to inpatient treatment against his will, and the military judge awarded 81 days of confinement relief for the 162 days of inpatient treatment. Appellant agrees with the military judge that an Article 13, UCMJ, violation occurred. However, Appellant contends the military judge erred by failing to provide adequate relief for the violation. Appellant asserts,

> By denying *Mason* credit in the first place (inpatient treatment was not tantamount to confinement), the military judge *lowered the value* of the *independent* Article 13, UCMJ, violation. In

> essence, the military judge merged the two independent bases for credit to erroneously find that the Article 13, UCMJ, violation was, in effect, "not that bad." This cheapened [Appellant's] liberty rights and sanctioned the command's actions, denying [Appellant] meaningful relief.

Although we find Appellant's reasoning rather opaque, we understand he contends the military judge's failure to recognize Appellant's inpatient treatment was restriction tantamount to confinement also lessened the military judge's view of the severity of the Article 13, UCMJ, violation. In the simplest terms, Appellant contends the military judge failed to provide adequate meaningful relief for the Article 13, UCMJ, violation he found.

In response, the Government contends the military judge's conclusion that Article 13, UCMJ, was violated was erroneous, and consequently Appellant is not entitled to additional relief. The correctness of the military judge's conclusion regarding the existence of an Article 13, UCMJ, violation is not the matter before us on appeal. Nevertheless, reviewing de novo whether Appellant is entitled to additional relief for unlawful pretrial punishment, we agree with the Government that he is not.

The first prohibition in Article 13, UCMJ, is "the intentional imposition of punishment on an accused prior to trial." *Fischer*, 61 M.J. at 418. The CAAF has explained this is "a matter of intent, which is determined by examining the purposes served by the restriction or condition." *Howell*, 75 M.J. at 393 (citation omitted). In this case, the military judge found Appellant's command acted "for humanitarian purposes," with "benign and responsible command motives to try to get [Appellant] the help he needed, even if he didn't want it." Thus, the military judge plainly did not find an intent to punish Appellant, but to assist him. Moreover, Appellant's inpatient mental health treatment does not "on its face appear to be punishment," but instead necessary care overseen by medical providers. *See id.*

The second prohibition in Article 13, UCMJ, is "pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial," *Fischer*, 61 M.J. at 418, which may be evidenced by conditions "sufficiently egregious [to] give rise to a permissive inference that an accused is being punished," or conditions "so excessive as to constitute punishment." *King*, 61 M.J. at 227. Such severe "pretrial confinement conditions" are not in evidence with respect to Appellant's inpatient treatment. The military judge found Appellant's inpatient treatment was not restriction tantamount to confinement, much less actual pretrial confinement conditions so egregious or excessive as to constitute punishment. On the contrary, it was medical care.

Appellant cites *United States v. Williams*, 68 M.J. 252, 256 (C.A.A.F. 2010), for the proposition that "a government agency must abide by its own rules and regulations where the underlying purpose of such regulations is the protection of personal liberties or interests," and failure to do so *may* result in a violation of Article 13, UCMJ. Of course we agree, depending on the circumstances; however, *Williams* is significantly different from the instant case. In *Williams*, the violation of the regulation in question "resulted in the [appellant] being subjected to more onerous conditions that were not related to a legitimate governmental objective" while the appellant was in actual pretrial confinement. *Id.* at 255. Such pretrial confinement conditions that are more rigorous than necessary fall squarely within the second prohibition of Article 13, UCMJ. As described above, Appellant's participation in inpatient mental health treatment was not comparable.

Accordingly, we find Appellant has not demonstrated he is entitled to additional relief for an Article 13, UCMJ, violation.

## B. R.C.M. 707 Speedy Trial

### 1. Additional Background

Appellant's commander ordered him into pretrial confinement on 8 September 2022. On 19 September 2022, Appellant was released from pretrial confinement and entered inpatient mental health treatment. Appellant's commander preferred the charges on 30 September 2022. Appellant returned to pretrial confinement on 28 February 2023. Appellant was arraigned on 21 March 2023, 194 days after he first entered pretrial confinement and 183 days after preferral.

On appeal, the Government moved to attach a declaration from Captain (Capt) MW, the special trial counsel at Appellant's court-martial, dated 2 October 2024. Capt MW's declaration identified and explained an attached record of email correspondence between trial counsel, trial defense counsel, and the military judge. The declaration and attachment indicate that motions hearings and an arraignment for Appellant's court-martial were originally scheduled for 12–14 December 2022. However, after the parties determined the motions hearings were unnecessary, the Defense agreed to postpone the arraignment until the scheduled trial date on 21 March 2023, and to exclude the period from 14 December 2022 through 20 March 2023 for R.C.M. 707 speedy trial purposes. The military judge treated these messages from the parties as "the functional equivalent of a joint request for a continuance until 21 March 2023," which he granted by email. The military judge also excluded the period from 14 December 2022 until 20 March 2023 from the "speedy trial clock," a period of 96 days.

Appellant opposed the Government's motion to attach Capt MW's declaration, arguing *inter alia* the declaration and its attachment were outside the "entire record," as defined by *United States v. Jessie*, 79 M.J. 437, 440 (C.A.A.F. 2020), and therefore beyond our statutory authority to review under Article 66, UCMJ, 10 U.S.C. § 866. This court granted the motion to attach, noting we would "defer consideration of the applicability of *United States v. Jessie* and related case law to the attachment" until our Article 66, UCMJ, review was complete.

At the outset of Appellant's court-martial on 21 March 2023, the military judge summarized his prior communications with the parties. Among other communications, the military judge referred to "a series of joint status emails that [he] received from the parties to advise where [they] were on the proceeding." The email communications described above regarding the continuance from 14 December 2022 until 21 March 2023 were not otherwise made part of the record of trial. The military judge asked whether either party "desire[d] to add to or edit" his summary. Trial counsel and trial defense counsel both responded "No, Your Honor."

### 2. Law

"The accused shall be brought to trial within 120 days after the earlier of: [p]referral of charges; [t]he imposition of restraint . . . ; or [e]ntry on active duty under R.C.M. 204." R.C.M. 707(a). "If the accused is released from pretrial restraint for a significant period, the 120-day time period under this rule shall begin on the earlier of (i) the date of preferral of charges; (ii) the date on which restraint . . . is reimposed; or (iii) the date of entry on active duty . . . ." R.C.M. 707(b)(3)(B). "[P]retrial delays approved by a military judge or the convening authority shall be . . . excluded" for purposes of "determining whether the [120-day] period . . . has run." R.C.M. 707(c); *see also United States v. Guyton*, 82 M.J. 146, 151 (C.A.A.F. 2022) (quoting R.C.M. 707(c)). "[F]ailure to comply with this rule will result in dismissal of the affected charges," with or without prejudice. R.C.M. 707(d), (1); *United States v. Heppermann*, 82 M.J. 794, 803 (A.F. Ct. Crim. App. 2022).

In general, we review alleged R.C.M. 707 violations de novo. *Heppermann*, 82 M.J. at 803 (citation omitted). However, the applicable version of R.C.M. 707(e) provides: "Except as provided in R.C.M. 910(a)(2) [pertaining to conditional guilty pleas], a plea of guilty which results in a finding of guilty forfeits any speedy trial issue as to that offense, unless affirmatively waived." We review forfeited issues for plain error. *Davis*, 79 M.J. at 331. Under the plain error standard of review, the "[a]ppellant bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (citation omitted).

The CAAF has held that, in general, a Court of Criminal Appeals (CCA) reviewing a case pursuant to Article 66, UCMJ, "cannot consider matters outside the 'entire record,'" defined as the "record of trial," "allied papers," and "briefs and arguments that government and defense counsel (and the appellant personally) might present regarding matters in the record of trial and 'allied papers.'" *Jessie*, 79 M.J. at 440–41 (citing R.C.M. 1103(b)(2) and (3) (2016 *MCM*); *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988); *United States v. Fagnan*, 30 C.M.R. 192, 194 (C.M.A. 1961)).[5] In *Jessie*, the CAAF recognized that its decisions since *Fagnan* indicated two exceptions to this general rule. *Id.* at 442–43. First, "some precedents have allowed the CCAs to supplement the record" with affidavits or hearings "when deciding issues that are raised by materials in the record." *Jessie*, 79 M.J. at 442. Second, CAAF precedents also "allowed appellants to raise and present evidence of claims of cruel and unusual punishment and violations of Article 55, UCMJ, even though there was nothing in the record regarding those claims." *Id.* at 444.

R.C.M. 801(f) provides:

> All sessions involving rulings or instructions made or given by the military judge shall be made a part of the record. All rulings and instructions shall be made or given in open session in the presence of the parties and the members, except as otherwise may be determined in the discretion of the military judge.

"Whether an accused has waived an issue is a question of law we review de novo." *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Davis*, 79 M.J. at 331 (quoting *Gladue*, 67 M.J. at 313). Appellate courts

---

[5] The CAAF's opinion in *Jessie* was based on the then-applicable version of Article 66(c), UCMJ, which provided that CCAs decided whether or not to affirm the findings and sentence "on the basis of the entire record." *Jessie*, 79 M.J. at 440. Congress preserved the "on the basis of the entire record" language in its 2016 revision of Article 66, UCMJ, but moved it from subsection (c) to subsection (d)(1). *See* Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2019 *MCM*). However, effective 1 January 2021, Congress again revised Article 66, UCMJ, and removed this phrase from subsection (d)(1). *See* National Defense Authorization Act for Fiscal Year 2021, § 542(b)(1)(A), Pub. L. 116-283, 134 Stat. 3388, 3560 (1 Jan. 2021); Article 66(d)(1)(A), UCMJ (*Manual for Courts-Martial, United States* (2024 ed.)). CAAF has not yet addressed what if any impact this statutory change has on its opinion in *Jessie*. However, assuming for purposes of analysis that the limitations set forth in *Jessie* still apply, for the reasons set forth in this opinion we conclude we may nevertheless consider the material the Government moved this court to attach.

generally review forfeited issues for plain error, but "a valid waiver leaves no error to . . . correct on appeal." *Id.* (citation omitted).

### 3. Analysis

Appellant's reply brief asserts the Government's motion to attach Capt MW's declaration and its attachment raise two preliminary issues we must resolve before we reach the merits of his R.C.M. 707 speedy trial argument. First, he asserts *Jessie* precludes our consideration of the attached matters because (1) it is not part of the "entire record," and (2) the materials in the record do not raise the issue of the R.C.M. 707 speedy trial requirement because there is no discussion of R.C.M. 707 in the record. We agree with Appellant as to the first point, but disagree as to the second. It is evident from the record—*e.g.*, the charge sheet and the transcript of the proceedings—that Appellant was not arraigned within 120 days of the preferral of charges, without apparent explanation.[6] These facts raise the question of whether the Government violated R.C.M. 707. We are not persuaded R.C.M. 707 must be specifically referred to somewhere in the record in order for the record to "raise" an apparent R.C.M. 707 violation within the meaning of *Jessie*. Accordingly, we find the attached material fits the exception in *Jessie* for issues that are raised by the record but which "cannot be resolved on appeal by materials in the record." *Jessie*, 79 M.J. at 442 (citation omitted).

Next, Appellant essentially contends R.C.M. 801(f) required the military judge's exclusion of time for purposes of R.C.M. 707 to be "made a part of the record." Appellant further contends that because it was not, the record is incomplete, and granting the Government's motion to attach is insufficient to complete the record. *See, e.g.*, *United States v. Welsh*, No. ACM S32719, 2022 CCA LEXIS 631, at *2 (A.F. Ct. Crim. App. 26 Oct. 2022) (unpub. op.) ("We acknowledge the motion to attach was granted, but we do not agree that this cures the defect without the exhibit actually being incorporated into the [record of trial].") We are not persuaded the record of trial is incomplete. R.C.M. 1112(b) and (f) set forth the required contents of the record of trial and the attachments to the record for purposes of appellate review, respectively. Appellant does not identify any provision of R.C.M. 1112(b) or (f) which would require the military judge's email exchanges with counsel regarding the R.C.M. 707 exclusion to be included in or attached to the record, nor do we

---

[6] Appellant contends he was continuously under pretrial restraint within the meaning of R.C.M. 707 from 8 September 2022 until 21 March 2023, including his time undergoing inpatient mental health care. However, the delay between the dates of preferral and arraignment are sufficient to implicate R.C.M. 707. For purposes of this issue, we find it unnecessary to affirmatively determine whether Appellant's inpatient treatment constituted pretrial restraint.

perceive such a requirement. Moreover, they were not marked as an exhibit or otherwise made part of the record prior to docketing with this court. In that sense, this court has the entire original record, and nothing is "missing" from it to render it incomplete.

To the extent Appellant contends the military judge's R.C.M. 707 exclusion of time *should* have been part of the record in accordance with R.C.M. 801(f), we find Appellant has, if not waived, at least forfeited the issue when trial defense counsel failed to request the military judge elaborate on his summary of the "joint status emails" from the parties. Reviewing for plain error, we find none. The email communications between the military judge and counsel were not a "session" of the court-martial within the meaning of the first sentence of R.C.M. 801(f). As to the requirement that "[a]ll rulings and instructions shall be made or given in open session," this provision is explicitly subject to the military judge's "discretion" to determine "otherwise." R.C.M. 801(f). In the absence of any request by the Defense to put the military judge's R.C.M. 707 exclusion on the record, we find no clear or obvious error. *See Robinson*, 77 M.J. at 299.

Accordingly, having determined we may consider Capt MW's declaration and the attached email correspondence, we further find Appellant is not entitled to relief. We find no violation of R.C.M. 707, much less plain error. The military judge excluded 96 days for R.C.M. 707 purposes—with the full agreement of trial defense counsel—bringing the accountable number of days well below 120.

## C. Sentence Severity

### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citation omitted). Our authority to determine sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

"A bad-conduct discharge is less severe than a dishonorable discharge and is designed as a punishment for bad-conduct rather than as a punishment for serious offenses of either a civilian or military nature." R.C.M. 1003(b)(8)(C).

### 2. Analysis

Appellant contends his bad-conduct discharge is inappropriately severe in light of his pretrial confinement and restraint, his "substantial . . . growth through mental health treatment, the seriousness of the offenses he was convicted of, and the circumstances surrounding his crime[s]." He faults the Government for "miss[ing] or ignor[ing] all the warning signs" and then "prosecut[ing] him for his failed attempt" to kill himself. Appellant contends his five months of inpatient mental health treatment transformed him such that he "was not the same [A]irman" who committed the offenses. Appellant acknowledges his presentencing testimony that he knew his fellow Airmen might get hurt when he lit his bed on fire; however, his intent was only to die by smoke inhalation, and he started the fire in a way that was unlikely to kill the other occupants of the building. Appellant concludes, "[c]lassifying a failed suicide attempt where only the suicidal actor was harmed as 'bad conduct' is disdainful."

We are not persuaded Appellant's bad-conduct discharge is inappropriately severe. Contrary to Appellant's argument, he was not prosecuted for attempting suicide; he was prosecuted for the serious offense of aggravated arson and related offenses, which created a risk to the health and safety to many of his fellow Airmen as well as himself. Appellant pleaded guilty to the charges, unconditionally admitting his criminal responsibility. Based on his guilty pleas, Appellant faced a maximum punishment that included a dishonorable discharge and confinement for 25 years, among other penalties. Through the admitted evidence and Appellant's unsworn statements, the court members were well-informed of the nature of his mental health problems and the progress of his inpatient treatment. The court members likely took these factors into account when they adjudged a relatively lenient sentence including only 30 days of confinement and one month of forfeitures—entirely nullified by the sentence credit the military judge awarded—in addition to the bad-conduct discharge. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude Appellant's sentence is not inappropriately severe.

## D. Appellate Delay

Appellant's record of trial was docketed with this court on 13 June 2023. Appellant requested and was granted 12 enlargements of time to file his assignments of error, over the Government's opposition, before filing his brief on

5 September 2024. The Government filed a timely answer brief on 7 October 2024, and Appellant filed a reply brief on 15 October 2024.

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay "where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals." *Id.* at 142. Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We review de novo an appellant's entitlement to relief for post-trial delay. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *Moreno*, 63 M.J. at 135).

Over 18 months have elapsed since Appellant's record of trial was originally docketed with this court. Therefore, under *Moreno*, there is a facially unreasonable delay, although we note the 18-month threshold has been exceeded by less than one month. Accordingly, we have considered the *Barker* factors and find no violation of Appellant's due process rights. Appellant is not in confinement and has not alleged any particularized prejudice from the delay, and we perceive none. Absent prejudice, we find the delay involved in Appellant's case—primarily attributable to the defense motions for enlargements of time—has not been so egregious as to adversely affect the perception of the military justice system. Furthermore, recognizing our authority under Article 66(d), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), we conclude no such relief is warranted.

## III. CONCLUSION

The findings as entered are correct in law, the sentence as entered is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court